*In re* MARRIAGE OF GAYLE L. WILDER, Petitioner-Appellant, and HOWARD L. WILDER, Respondent-Appellee.

First District (5th Division) No. 82—1740

Opinion filed October 28, 1983.—Supplemental opinion filed on denial of rehearing April 6, 1984.

Beermann, Swerdlove, Woloshin, Barezky & Berkson, of Chicago (Miles N. Beermann and Howard A. London, of counsel), for appellant.

Schiller, Du Canto and Fleck, Ltd., of Chicago (Donald C. Schiller and Terry J. Finman, of counsel), for appellee.

JUSTICE SULLIVAN delivered the opinion of the court:

This appeal is from a supplemental judgment entered in an action for dissolution of marriage. Petitioner raises numerous issues concerning (1) the trial court's classification and valuation of marital and nonmarital property; (2) the award of rehabilitative rather than permanent maintenance and the sufficiency thereof; (3) the sufficiency of child support and the trial court's failure to require respondent to provide security therefor; (4) the denial of her petition for attorney fees; and (5) the denial of recovery on alleged arrearages in temporary maintenance and child support.

On November 5, 1981, a judgment was entered granting dissolution of the parties' marriage but reserving the issues of child support, maintenance, property disposition, and attorney fees. Respondent did not contest petitioner's request for dissolution, and no questions pertaining thereto are raised in this appeal. Subsequently, hearings were held on the remaining issues, and the evidence introduced established that the parties were married in 1968 and had three children: Kelly, a

20-year-old college student (petitioner's child from a former marriage, legally adopted by respondent); Leslie, 13; and Amy, 11. By agreement, petitioner was granted custody of the minor children. Petitioner, a 41-year-old housewife, had training and worked as an electronmicroscope technician prior to the marriage but had not been employed outside the home during the marriage. Respondent, 58 years of age, was an opthalmologist specializing in retinal surgery and was employed by Drs. Wilder and Vygantas, Ltd., a professional corporation formed in 1970 in which he held 50% of the stock. The parties also presented testimony and evidence with regard to their property, both marital and nonmarital, and the valuation thereof, their current and future financial needs, and the needs of the children. That evidence is voluminous and, in most cases, conflicting; therefore, we shall set forth only such portions thereof as are relevant to the particular issues raised as they are discussed.

On June 17, 1982, the trial court entered its written order resolving the disputed issues. The following disposition of property was made:

PETITIONER

Nonmarital property:

| | |
|---|---|
| Inheritance from her father's estate | $125,000 |
| Personalty | 4,140 |
| | $129,140 |

Marital property:

| | |
|---|---|
| Marital home | $328,000 |
| Household furnishings | 45,860 |
| Two automobiles | 6,325 |
| | $380,185 |

RESPONDENT

Nonmarital property:

| | |
|---|---|
| Stock in Drs. Wilder & Vygantas, Ltd. | $157,553 |
| Personalty | no finding |
| | $157,553 plus items of unknown value |

Marital property:

| | |
|---|---:|
| Highland Park residence | $35,000 |
| Palm Springs condominium | 70,000 |
| | plus unknown rental value |
| Car collection | $144,000 |
| Art collection | 25,000 |
| Money Market fund | 5,000 |
| Profit sharing and pension plans | 158,675 |
| Personalty | no finding |
| | $437,675 |
| | plus items of unknown value |

In addition, several investments of unknown value, described as tax shelters, were divided in kind; and respondent was ordered to pay petitioner $20,000, assume sole liability for $118,000 in debts, most of which were incurred by him after the parties separated, and release a debt of $3,000 owed to him by petitioner. Petitioner was awarded rehabilitative maintenance in the amount of $2,400 per month for five years, and the court ordered respondent to pay $500 per month per child for the support of the minor children, all of their reasonable medical and college expenses, and 60% of Kelly's college expenses during her final year. Petitioner's request for attorney fees was denied, as was her petition for recovery of arrearages allegedly due under an order for temporary maintenance and child support, and this appeal followed.

OPINION

Petitioner first contends that the trial court erred in finding that respondent's interest in Drs. Wilder and Vygantas, Ltd. (the stock) was nonmarital property. In the alternative, she maintains that the stock was transmuted into marital property because its increase in value resulted entirely from contributions made during the marriage. She asserts that this erroneous characterization of the stock requires redetermination of all of the property and support issues, and the judgment therefore must be reversed and remanded.

Before reaching the merits of petitioner's contention, we note that the trial court, after finding that the stock was respondent's nonmarital property, went on to say that "[t]his finding of the Court, if it

were contrary and found to be marital, would have little or no effect on the total property disbursements as it is the Court's intention to make an equitable distribution of property to the parties." It appears that even if the trial court had found the stock to be marital, as petitioner asserts, its distribution of property would have been unaffected, since it had considered the value of all property, whether marital or nonmarital, in dividing the marital property, as it is required to do under section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (the Act). Ill. Rev. Stat. 1981, ch. 40, par. 503(d); see *In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 412 N.E.2d 1336.

In light of the court's statement, we question whether reversal on this issue would be required even if we were to find that the trial court erred in categorizing the stock as nonmarital property. The cases cited by petitioner for this proposition are distinguishable. In *In re Marriage of Peshek* (1980), 89 Ill. App. 3d 959, 412 N.E.2d 698, the judgment of the trial court was reversed and the cause remanded for redetermination of the property issues where the court failed to value or apportion a significant marital asset. Similarly, in *In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 397 N.E.2d 488, while the trial court had correctly found that certain stock was marital property and had apportioned it to one of the spouses, it had failed to make any finding as to the value thereof. We reversed and remanded for redetermination of the property issues, noting that "without evidence of the respective values of the various items of the marital property it was impossible for the court to divide the marital property in 'just proportions' as required by the statute." 78 Ill. App. 3d 627, 636, 397 N.E.2d 488, 495.

Here, unlike either *Peshek* or *Olsher*, the trial court did classify and value the property in question, and affirmatively stated that it considered that value in apportioning the marital property. Furthermore, it made a specific alternative finding that even if the property were marital, the division it made would be unaffected, or at least that any effect would be *de minimus*. This situation appears to be unique; the parties have not cited, nor has our own research discovered, any case in which such an alternative finding has been made, nor are we aware of any case wherein a trial court's error in classifying property as nonmarital has been found harmless based on its statement that the determination would be the same even if the property in question were found to be marital. Nevertheless, we may be guided in this instance by the general rule that not every error committed by the trial court in a civil case leads to reversal

(*Svenson v. Miller Builders, Inc.* (1979), 74 Ill. App. 3d 75, 392 N.E.2d 628); rather, there must be some showing that the appellant has been prejudiced by that error (*County of Cook v. Patka* (1980), 85 Ill. App. 3d 5, 405 N.E.2d 1376), and reversal is required only where it appears that the outcome might have been different had the error not occurred (*Canales v. Dominick's Finer Foods, Inc.* (1981), 92 Ill. App. 3d 773, 416 N.E.2d 303). Therefore, in the light of the alternative finding of the court, it is our view that the error, if any, in classifying the stock as nonmarital property was harmless, and reversal on that issue would not be required. Of course, this question is entirely separate from the issue of whether the division was equitable, as we are concerned at this point only with the label placed on the property.

■ Moreover, we are not persuaded that the trial court's classification of the property as nonmarital is erroneous. Respondent had been practicing as a specialist in the field of retinal surgery since 1958, and his practice and reputation were well established when the parties married in 1968. Two years later, respondent changed the form of his business from a sole proprietorship to a professional corporation, thereafter transferring 50% of the stock to Dr. Vygantas. The instrument of conveyance of assets executed at that time recites that respondent received 10 shares of stock, par value $100 per share, and a $5,000 note in exchange for his office furniture and equipment, items which the undisputed testimony establishes were acquired prior to the marriage. Section 503(a)(2) of the Act defines nonmarital property, in part, as "property acquired in exchange for property acquired before the marriage." (Ill. Rev. Stat. 1981, ch. 40, par. 503(a)(2).) The trial court found, based on the evidence before it, that respondent had met his burden of proving that the stock was acquired exclusively in exchange for nonmarital property. See *In re Marriage of Smith* (1981), 86 Ill. 2d 518, 427 N.E.2d 1239.

Nevertheless, petitioner maintains that this burden was not met, pointing to respondent's admission that he transferred his patient files to the corporation. It is her position that these files represent a proprietary interest in the patients, that the transfer was part of the consideration for the stock, and that some of the patient files presumably were acquired between 1968 and 1970 (there was no evidence on this issue) while the parties were married, and were therefore marital property. The flaw in petitioner's argument is her assumption, entirely contradicted by the record, that the patient files were part of the consideration for the stock. The instrument of conveyance recites as the sole consideration the transfer of furniture and equipment. Re-

spondent's statement that an undisclosed number of patient files were transferred to the corporation does not contradict that document; he did not state that the transfer was in consideration for the stock, nor is there any evidence that the files were of any value or that they were acquired after the marriage. In the light of this evidence, we do not believe that the trial court's finding that the stock was acquired in exchange for property acquired before the marriage was against the manifest weight of the evidence.

■ Petitioner's alternative argument that the stock in question was transmuted into marital property is also without merit. She theorizes that the stock appreciated in value from $1,000 (the par value of 10 shares) to at least $157,553 (the current market value admitted by respondent), and maintains that this "substantial increase in value" could not be due to inflationary factors; therefore, she posits, the increase must have resulted entirely from the contribution of both parties during the marriage, transmuting it into marital property. (See *In re Marriage of Lee* (1981), 87 Ill. 2d 64, 430 N.E.2d 1030.) We agree that where a party can show that a substantial contribution of marital property significantly increased the value of nonmarital property, a rebuttable presumption arises that the property was transmuted into marital property (*In re Marriage of Olson* (1983), 96 Ill. 2d 432, 451 N.E.2d 825.) We do not agree that, as petitioner asserts, the presumption arises automatically; she had the burden of proving that a significant contribution occurred. (See *In re Marriage of Olson*.) That burden has not been met in this case. Petitioner relies solely on the difference between the par value of the stock acquired and its admitted current market value in arguing that transmutation occurred. However, the par value recited on a stock certificate is not the proper measure of its value; rather, stock is usually valued at its market value. (*In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 397 N.E.2d 488.) Here, there is no evidence of the market value of the stock at the time of its acquisition, possibly because petitioner did not attempt to raise before the trial court the question of whether the property had been transmuted. In the absence of such proof, we are unable to determine whether the increase, if any, was not attributable to inflationary factors. Since petitioner failed to provide evidence of a substantial contribution of marital property, no presumption of transmutation arose, and there was therefore nothing for respondent to rebut.

■ Petitioner next contends that, even if the trial court was correct in ruling that the stock was nonmarital property, it erred in failing to consider good will as a factor in determining the value of that

stock. As a result, she maintains, the stock was undervalued by at least $139,000, and all of the property issues must be redetermined in the light thereof.

Testimony established that the stock in question is subject to a buy-sell agreement which provides in relevant part that upon respondent's death, incapacity, or the termination of his employment, the corporation has the right and is obligated to purchase his shares. The purchase price provided by the agreement is the greater of the proceeds of any policy insuring his life or the value of the shares, to be determined by the value of the accounts receivable plus the fair market value of furniture, equipment, and leasehold improvements owned by the corporation. It is undisputed that, under this formulation, the value of the stock is $157,553. However, experts testifying for petitioner included good will in appraising the value of the stock, stating that the value of that intangible asset was at least $139,000.

The question whether good will must be included as a factor in determining the value of stock in a professional corporation was first addressed by an Illinois court in *In re Marriage of White* (1981), 98 Ill. App. 3d 380, 424 N.E.2d 421. There, the fifth district held that good will is a factor to be considered in valuing a professional corporation "under the theory that despite the intangible quality of good will in a professional practice, it is of value to the practicing spouse both during and after the marriage and its value is manifested in the amount of business and, consequently, in the income which the spouse generates." (98 Ill. App. 3d 380, 384, 424 N.E.2d 421, 424.) We do not find this reasoning persuasive, since the *White* court's definition of good will is reflected in three of the factors which the trial court must consider in apportioning marital property under section 503(d) of the Act—"the relevant economic circumstances of each spouse when the division of property is to become effective"; the "occupation, amount and sources of income, vocational skills [and] employability *** of each of the parties"; and "the reasonable opportunity of each spouse for future acquisition of capital assets and income." (Ill. Rev. Stat. 1981, ch. 40, pars. 503(d)(4), (7), (10).) Thus, the ability to generate income, which petitioner argues is what "good will" reflects, is already taken into account under the Act. If we were to adopt petitioner's argument, that factor would in effect be given double consideration under the Act.

The first district appears to have adopted this latter view in *In re Marriage of Greenberg* (1981), 102 Ill. App. 3d 938, 429 N.E.2d 1334. There, the trial court had not placed specific valuations on any of the parties' property. We held that it was not "essential for purposes of

complete fairness" that a definite value be assigned to each item under the circumstances of that case. With regard to the court's failure to value the petitioner's optometry business, we stated that "the worth of the business and its future earnings will be determined largely by the contributions and services made by petitioner. Any attempt at placing an exact value upon this asset would be completely arbitrary and therefore utterly futile." (102 Ill. App. 3d 938, 945, 429 N.E.2d 1334, 1340.) We went on to find that, because there was evidence of petitioner's earning potential in the form of testimony concerning his gross income from the business, the trial court's award of 62% of the marital assets to the respondent and 38% of the assets plus the optometry business to petitioner was not abuse of discretion. This decision reflects a view that the "earning potential" of a professional corporation need not be ascertained as a set value so long as it is considered by the trial court in apportioning the assets.

Here, the trial court stated that it had considered all of the factors enumerated in section 503 of the Act. Although, unlike *Greenberg*, the trial court distributed over half of the marital assets to respondent in addition to his medical practice, it also obligated him to make an immediate $20,000 cash payment to petitioner, to assume sole liability for $118,000 in debts, and to provide over $40,000 per year in maintenance and child support for five years. While respondent's medical practice generates substantial income ($101,118 net in 1981), it appears to be his only major source of income and must provide not only for his own reasonable needs but for those of petitioner and the minor children as well. We also note that although respondent is currently in good health and considered a skilled surgeon within the medical community, he was 58 years old at the time of this action and dependent for his income on a skill requiring extreme manual dexterity. Since the trial court considered respondent's earning potential, *i.e.;* "good will" as defined in *White*, we cannot say that it abused its discretion in failing to set a fixed monetary value for good will in valuing the stock.

Petitioner also contends that the trial court erred in (a) overvaluing various items of marital and nonmarital property assigned to her and (b) excluding evidence of the value of certain property in respondent's possession.

With regard to the allegedly overvalued property, petitioner first disputes the trial court's finding that her interests in a trust fund and a home established by her father's will had a value of $125,000. Petitioner maintains that the present value of her interests is $102,295, while respondent asserts, as he did at trial, that the present value

thereof is $182,918. The difference in their calculations is largely due to the parties' assumptions regarding the occurrence of various contingencies provided in the will—petitioner assumes the least favorable set of events and bases her calculations on an assumption that four beneficiaries will share in the income and principal of the trust fund; the respondent assumes the most favorable scenario, that only three beneficiaries will be entitled to distributions.

The valuation of assets in an action for dissolution of a marriage is a question of fact (*In re Marriage of Ayers* (1980), 82 Ill. App. 3d 164, 402 N.E.2d 401), and the trial court's findings thereon will not be disturbed on review unless contrary to the manifest weight of the evidence (*Petersen v. Petersen* (1978), 58 Ill. App. 3d 272, 374 N.E.2d 244). In the instant case, given the highly speculative nature of the contingencies in question, we believe that the trial court's determination is supported by the record, since it clearly gave substantial weight to the possibility that the various contingencies, all of which are entirely dependent on the unknown future actions of third parties, will occur.

Employing the same standard, we have also considered petitioner's contention that the trial court overvalued various items of personalty, and find that its determination is supported by evidence in the record. Therefore, its decision thereon will not be disturbed.

■ Petitioner further maintains that the trial court erred in excluding evidence of the value of several items of personalty in respondent's possession. At trial, the testimony established that respondent had furnished his Highland Park home, purchased after the separation, and that he was in possession of two antique Tang Dynasty Chinese burial urns which petitioner concedes were nonmarital property. Petitioner made no attempt to present evidence of their value, but did seek to elicit this information from respondent during cross-examination. However, the trial court sustained objections to questions pertaining thereto, ruling that they were beyond the scope of the direct examination, in which respondent had mentioned acquisition of the house but did not discuss its furnishings, and testified that the urns were nonmarital property but did not mention their value. The trial court went on to note that, had petitioner wished to present evidence of the value of these items, she could have done so during her case in chief. As a result, the record contains no evidence of the value of these items, all of which were awarded to respondent in the supplemental judgment.

Although the trial court's ruling may have been technically correct, it effectively excluded the introduction of any evidence with re-

gard to the assets in question.[1] The real issue here, then, is not the propriety of its evidentiary ruling but whether its disposition of assets was proper in the absence of that evidence. In a number of recent cases, we have reversed and remanded judgments in dissolution actions where, as here, no proper valuation of assets had been established (see, *e.g., In re Marriage of Walsh* (1982), 109 Ill. App. 3d 171, 440 N.E.2d 310; *In re Marriage of Kundit* (1982), 107 Ill. App. 3d 310, 437 N.E.2d 777; *In re Marriage of Rothbardt* (1981), 99 Ill. App. 3d 561, 425 N.E.2d 1146), reasoning that the trial court cannot follow the mandate of section 503 to divide the marital property in "just proportions" unless proper values have been established. Furthermore, where evidence on this point is totally lacking, there is no basis upon which we can review the propriety of the court's determination. The above-cited cases have all concerned the failure to ascertain the value of marital assets, while here, some of the items in question are nonmarital property; nevertheless, we believe that the same rationale should be applied in the instant case since the trial court made specific mention of its intention to consider the value of *all* the property in dividing the marital property, and made detailed findings as to the value of petitioner's nonmarital property for that purpose while ignoring the value of much of respondent's nonmarital property.

Respondent contends that petitioner has waived this issue by her failure to offer evidence of the value of those items at trial, and that, in any event, the personalty is not so substantial an asset as to be relevant in the division of the marital property. However, we have held that the failure to offer evidence on the value of assets does not waive the right to appeal the issue (*In re Marriage of Walsh* (1982), 109 Ill. App. 3d 171, 440 N.E.2d 310) and, with regard to respondent's second contention, we note that absent any evidence of value, we have no way of determining whether these are substantial assets or not. Accordingly, we must remand the cause to the trial court for the purpose of receiving evidence concerning the assets in question and redetermining the apportionment of marital assets.

■ Petitioner next contends that the trial court abused its discretion in (a) failing to award her sufficient marital property and/or maintenance and child support to enable her and the children to main-

---

[1] We also note that, in addition to the items mentioned by petitioner, the record is devoid of any evidence with regard to other items assigned to respondent as his nonmarital property, or the rental value of the California condominium awarded to him. However, these items have not been raised by petitioner, and we therefore will not consider them. See *In re Marriage of Asch* (1981), 100 Ill. App. 3d 293, 426 N.E.2d 1066.

tain the standard of living enjoyed during the marriage and (b) failing to award permanent maintenance. Because the award of maintenance is related to the disposition of marital property, it must be remanded for reconsideration in the light of our disposition of the previous issue. (See *In re Marriage of Jones* (1982), 104 Ill. App. 3d 490, 432 N.E.2d 1113.) However, we believe that it is appropriate to address the second question raised by petitioner since it concerns not the amount but the duration of the maintenance award.

Petitioner asserts that she is entitled to permanent maintenance because she is unemployed and is employable only at an income far below that necessary to maintain her predissolution standard of living, and that the trial court's finding to the contrary is against the manifest weight of the evidence. The only evidence pertinent to this issue was petitioner's testimony wherein she stated that she worked as an electronmicroscope technician prior to her marriage, but had not been employed or received any further training during the marriage. In her opinion, because of the changes in techniques and equipment used by such technicians,. she was no longer qualified for employment in that field. Petitioner admitted that she had not investigated the possibility of retraining or the availability of job opportunities, nor did she have any idea what salaries were being paid to technicians in the Chicago area. However, she indicated that she did not have a degree and that it was her understanding that only persons with an M.D. or a Ph.D. were currently being trained as technicians. Petitioner further asserted that it was impossible for her to work or to undergo retraining because the older of the minor children, Leslie, was a diabetic who, while capable of taking care of herself, did not do so and consequently required constant monitoring of her mental and medical condition, food consumption, medication, and physical exercise.

Section 504(b) of the Act grants the trial court discretion in making awards of limited duration (Ill. Rev. Stat. 1981, ch. 40, par. 504(b); *In re Marriage of Pieper* (1979), 79 Ill. App. 3d 835, 398 N.E.2d 868) and, as with any discretionary matter under the Act, its decision will not be disturbed on review unless it amounts to an abuse of discretion or is against the manifest weight of the evidence (*In re Marriage of Bramson* (1981), 100 Ill. App. 3d 657, 427 N.E.2d 285). However, limited awards should not be based on speculation as to the future conditions of the parties (*In re Marriage of Campise* (1983), 115 Ill. App. 610, 450 N.E.2d 1333) but on circumstances disclosed by the evidence (*In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 426 N.E.2d 1087). Maintenance for a limited period is appropriate only where the spouse is employable at an income which would pro-

vide approximately the standard of living enjoyed during the marriage. *In re Marriage of Simmons* (1980), 87 Ill. App. 3d 651, 409 N.E.2d 321.

Here, there is no evidence to support the trial court's assumption that petitioner will be able, at the end of five years, to support herself in some reasonable approximation of the standard of living established during the marriage. In fact, petitioner's testimony was entirely to the contrary. Respondent asserts that the trial court, as trier of fact, was entitled to disbelieve that testimony. However, this is not a case of determining the credibility of conflicting witnesses; even if the trial court found petitioner's testimony totally incredible, there was still no contrary evidence on which it could base its conclusions. Therefore, we believe that its assumption that a five-year limitation was justified is against the manifest weight of the evidence.

However, we do not agree with petitioner's assumption that because the evidence does not support the limitation imposed, she is automatically entitled to permanent maintenance. The objective of the Act in authorizing rehabilitative maintenance is to enable a formerly dependent spouse to become financially independent in the future. (*In re Marriage of Bramson* (1981), 100 Ill. App. 3d 657, 427 N.E.2d 285.) A limitation on the award is generally intended as "an incentive for the spouse receiving support to use diligence in procuring training or skills necessary to attain self-sufficiency." (*In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 464, 426 N.E.2d 1087, 1096.) While there is insufficient evidence here to support a rigid limitation, there is no evidence justifying a finding that petitioner will never be employable; she has not yet explored the possibilities of retraining in her field or training in a new occupation, nor has she ascertained current openings or salaries in medical technology. Furthermore, she is 42 years old and apparently in good health. While there is some testimony that one of the children needs special attention, we note that she is currently in her mid-teens and there is other testimony that she is capable of caring for herself.

█ Under the circumstances, we believe that the most appropriate solution is that approved in a number of recent cases; the trial court should retain jurisdiction to enable it to assess the parties' relative circumstances and make such modifications in the award of maintenance as may be appropriate in the future. (See *In re Marriage of Campise* (1983), 115 Ill. App. 3d 610, 450 N.E.2d 1333; *In re Marriage of Bramson* (1981), 100 Ill. App. 3d 657, 427 N.E.2d 285; *In re Marriage of Pieper* (1979), 79 Ill. App. 3d 835, 398 N.E.2d 868.) This approach is best described in *In re Marriage of Asch* (1981), 100 Ill.

App. 3d 293, 426 N.E.2d 1066, wherein we approved the trial court's retention of jurisdiction for three years to review the maintenance award. That case is particularly instructive with regard to the alternatives open to the trial court under this flexible approach, as well as the responsibilities of the parties thereunder:

> "If at the end of the three years the court determines that respondent has reasonably sought employment and failed to find any thing suitable, the court will undoubtedly decide that the maintenance should continue, possibly at a higher amount. If, however, respondent has chosen not to seek employment and begin supporting herself, the court could then deny her further maintenance. Having already determined that respondent is able to support herself, the court could justifiably end the maintenance, finding it improper under section 504(a). Alternatively, it is possible that respondent will have found employment that would not provide adequate support. Acting on a motion for modification, the court could then provide for maintenance in a suitable amount." (100 Ill. App. 3d 293, 298, 426 N.E.2d 1066, 1069-70.)

On remand, we direct the trial court to modify its order to reserve jurisdiction over the maintenance award for the five-year period and, at that time, reevaluate the relevant circumstances of the parties.

Petitioner also raises two issues related to child support which we will address at this time, although on remand the trial court should consider whether any change in the amount thereof is warranted after redetermining the property division. (See *In re Marriage of Peshek* (1980), 89 Ill. App. 3d 959, 412 N.E.2d 698.) Petitioner first contends that the trial court erred in failing to require respondent to pay 100% of Kelly's college expenses, maintaining that the court was discriminating against her because she was adopted.

The original written order of the trial court failed to make provision for Kelly's expenses. This omission was brought to the trial court's attention and, after a discussion with the attorneys for both parties, the order was modified to provide that respondent would pay 60% of her educational expenses. We have read the transcript of this discussion, and it is our view that petitioner requested only 60%. Prior to trial, respondent had been ordered to pay 60% of those expenses. After the supplemental order was entered, the following colloquy took place between the court and counsel:

> "MR. HARDY [attorney for petitioner]: No mention has been made one way or the other of the older daughter, Kelly, who is attending college at the present time.

\* \* \*

We had requested in our case that he continue to pay the college education expenses as he has done up until this time.

COURT: Wasn't it a sixty, forty order?

MR. HARDY: First it was a one hundred percent order, then there was a sixty, forty order.

COURT: Does he have any objection to continuing that? She only has two more years.

MR. HARDY: She just finished her junior year. She has one more year.

\* \* \*

COURT: Let's continue it.

MR. YAVITZ [attorney for respondent]: So, if your Honor wishes we will go along with it.

COURT: Let's continue the status. You can draft an order.

\* \* \*

COURT: For one year only.

MR. HARDY: That is assuming she has completed three years which I believe is the case."

The import of this passage is that petitioner was asking the court to continue the order requiring respondent to pay 60% of the college expenses; at least it is clear that the court understood that to be the request, and counsel did nothing to clarify that understanding if such was not his intent. Instead, he asked that respondent *"continue* to pay the college education expenses as he has done *up until this time."* The court's response indicates that it assumed counsel referred to a continuation of the last order providing for 60%. This was a logical inference, with which counsel apparently acquiesced. Therefore, we find no error in the court's ruling. See *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 398 N.E.2d 126.

Petitioner also maintains that the trial court abused its discretion in failing to require that respondent furnish security for his support obligations. It is her position that he should be required to name her as the irrevocable beneficiary of his pension and profit sharing plan in order to secure his support obligations, maintaining that in light of his age, his liability for at least 10 to 12 more years, and her inability to support the children, security is necessary.

Section 503(f) of the Act provides that in order to promote the best interests of the children, the trial court may "[set] aside a portion of the jointly or separately held estates of the parties in a separate fund or trust" to insure their support. (Ill. Rev. Stat. 1981, ch. 40, par. 503(f).) We have held that, under this provision, the trial court

may require the supporting spouse to provide or maintain life insurance with the child as irrevocable beneficiary (*In re Marriage of Dulyn* (1980), 89 Ill. App. 3d 304, 411 N.E.2d 988); however, imposition of such an obligation is " 'inappropriate in the absence of evidence showing some need to protect the interests of the children' [citation] and therefore inappropriately applied to a responsible parent" (*Atkinson v. Atkinson* (1981), 87 Ill. 2d 174, 179, 429 N.E.2d 465, 467); that is, there must be some demonstrated unwillingness or inability to provide for the children (*In re Marriage of Preston* (1980), 81 Ill. App. 3d 672, 402 N.E.2d 332).

Here, respondent has provided for the needs of his children since the separation, and there is no indication that he will not continue to do so in the future. Petitioner nevertheless relies on his age in arguing that security is necessary in the instant case, claiming that otherwise his obligation to provide support and college expenses is contingent upon his remaining alive. However, as we noted in *In re Marriage of Dulyn* (1980), 89 Ill. App. 3d 304, 411 N.E.2d 988, age alone is not sufficient reason to require establishment of a fund. Moreover, respondent's obligation to support the children does not, as petitioner maintains, end with his death. Section 501(c) of the Act provides:

> "Unless otherwise agreed in writing or expressly provided in the judgment, provisions for the support of a child are terminated by emancipation of the child, except as otherwise provided herein, *but not by the death of a parent obligated to support the child*. When a parent obligated to pay support dies, the amount of support may be modified, revoked or commuted to a lump sum payment, to the extent just and appropriate in the circumstances ***." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 40, par. 510(c).)

Thus, it is clear that respondent's estate would be liable for future support "to the extent just and appropriate under the circumstances" (*In re Marriage of Dulyn* (1980), 89 Ill. App. 3d 304, 311) should he otherwise fail to provide for them. There is no reason to believe in the instant case that respondent, or his estate, will not be able to provide the support mandated. It appears that respondent has ample assets apart from the pension and profit sharing plan to provide all the necessary support. Therefore, we believe that the trial court did not abuse its discretion in this regard.

■■■ Petitioner also contends that the trial court erred in denying her petition for attorney fees, maintaining that it improperly (a) considered her failure to enter into a settlement agreement as a major

factor in its determination and (b) denied the petition before deciding the issues of property division, maintenance, and child support.

As we noted with regard to the sufficiency of maintenance and child support, the question of attorney fees must be remanded for reconsideration in the light of any modification the court might deem necessary in the division of property. At that time, the court may take into consideration all of the arguments made herein concerning the need to consider the relative ability to pay in relation to the parties' standard of living, and whether the failure to grant the petition for attorney fees will strip her of cash reserves and undermine her economic stability, as she contends.

■■■ Finally, petitioner asserts that the trial court erred in refusing to consider her petition for arrearages allegedly due under an order for temporary maintenance and child support on the ground that it was barred by an earlier agreed order.

It appears from the voluminous petitions in the record that respondent was ordered on June 27, 1980, to pay petitioner $3,500 per month as temporary maintenance and child support. That order was vacated on August 20, 1980, at which time respondent was ordered to pay 40% of his net income. Thereafter, several petitions were filed, some orders were entered thereon, petitions for rules to show cause were filed alleging failure to comply with those orders, and one rule to show cause was entered against petitioner. In an apparent attempt to dispose of these pending matters, the parties entered into an agreed order on August 10, 1981. Respondent agreed thereunder to (1) pay $1,150 as "a compromise of disputed sums owed Petitioner for maintenance and unallocated support pursuant to the Court Order of June 27, 1980"; (2) pay all obligations incurred by petitioner prior to June 27, 1980;[2] (3) pay 40% of his net year-end distribution and 40% of any rentals received from the Palm Springs condominium into an escrow account for the payment of certain obligations of petitioner, the balance, if any, to be distributed to her; and (4) agreed to dismiss the following claims: a petition for rule to show cause alleging that petitioner had violated a court order requiring her to (a) cease selling his nonmarital property, (b) provide the names and addresses of the purchasers of several items already sold, and (c) pay the mortgage and taxes due on the marital home; a petition for rule to show cause

---

[2]No amount is indicated in the order; however, petitioner had requested an order that he pay a number of obligations incurred prior to August 20, 1980, and listed therein bills in the aggregate amount of $7,972.79. That petition was still pending, but was dismissed as part of the agreed order.

alleging that petitioner violated an order requiring her to rescind the sale of his nonmarital property; and a rule to show cause entered against petitioner for violation of an order requiring her to turn over various nonmarital assets to respondent. In return, petitioner agreed to dismiss the following pending claims: (1) a petition for temporary relief asking that respondent be required to pay all obligations incurred by her prior to August 20, 1980; (2) motions to compel payment of the mortgage and taxes due on the marital home, to compel payment of her medical expenses, and to compel payment of college expenses; (3) a petition for rule to show cause alleging that respondent was not complying with the August 20 order to pay 40% of his income as temporary maintenance and child support wherein she asserted that he was manipulating his income in order to avoid compliance; and (4) a motion to vacate the order requiring her to allow respondent to remove numerous items of nonmarital property from the marital residence.

On January 19, 1982, petitioner filed a petition seeking arrearages under the August 20, 1980, order requiring respondent to pay 40% of his income, again alleging that he was manipulating his income to avoid fully complying with that order. The court found that the agreed order barred the claim for arrearages, and refused to consider it. Petitioner asserts that the court improperly relied on the doctrine of *res judicata* in denying her petition, maintaining that the agreed order was interlocutory in nature and that it merely reflected her voluntary dismissal of those claims.

Despite petitioner's attempts to characterize the agreed order as an "interlocutory order" and her actions as a "voluntary dismissal," it is clear that what occurred was a compromise or settlement of the pending claims between the parties. The doctrine of *res judicata* is irrelevant to this issue; instead, we must look to the effect of a compromise, which is defined as "an arrangement arrived at either in court or out of court, for settling a dispute on what appear to the parties to be equitable terms, having regard to the uncertainty they are in regarding the facts, or the law and the facts together ***." (11 Ill. L. & Prac. *Compromise & Settlement* sec. 2 (1981).) Because they promote peace and discourage needless litigation, public policy favors compromises and settlements, and a presumption of validity arises when they are created (*Blaylock v. Toledo, Peoria & Western R.R. Co.* (1976), 43 Ill. App. 3d 35, 356 N.E.2d 639), and in the absence of mistake or fraud, the agreement is conclusive on the parties as to all matters included therein (*Knoll v. Swanson* (1968), 92 Ill. App. 2d 398, 234 N.E.2d 543). A valid compromise is in the nature of a contract and

operates as a merger of all included claims, as well as a bar thereto. *Keim v. Kalbfleisch* (1978), 57 Ill. App. 3d 621, 373 N.E.2d 565.

Here, respondent agreed to pay petitioner $1,850, to pay certain bills, to dismiss two petitions to show cause, and to dismiss a rule to show cause entered against petitioner. In exchange, petitioner agreed to the dismissal of several of her petitions, including her petition for rule to show cause alleging that respondent was manipulating his income to avoid compliance with the August 20, 1980, order that he pay 40% of his net income. That is the same claim which she tried to raise again on January 19, 1982. There has been no allegation that respondent failed to comply with the agreement; therefore, we believe that petitioner must also abide by it. Under these circumstances, the trial court was correct in ruling that petitioner was barred by the agreed order from again asserting that respondent was not in compliance with the August 20 order.

For the reasons stated, the supplemental judgment of the trial court is reversed and the cause remanded for redetermination of the property distribution and reconsideration of the related issues of maintenance, child support, and attorney fees, and the trial court is directed to provide in any future order for the retention of jurisdiction over the rehabilitative maintenance award.

Reversed and remanded with directions.

WILSON, P.J., and LORENZ, J., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

JUSTICE SULLIVAN delivered the opinion of the court:

In a petition for rehearing, respondent raises numerous arguments concerning our action in reversing and remanding for the purpose of valuing certain assets and our determination that the trial court should have reserved jurisdiction for five years to review the award of maintenance rather than place an absolute limitation thereon. Because all of his contentions were raised in his brief on appeal and were considered by us in rendering our opinion, we see no purpose to be served in reconsidering these same arguments. However, respondent also asks (a) that we modify our opinion to provide that, on remand, the trial court is to concern itself solely with the evidence regarding the unvalued assets; and (b) that we now address the issues raised by petitioner concerning the adequacy of the trial court's award of maintenance and child support and its denial of her petition for attorney fees. He asserts that, in this manner, we can assure a

fair distribution of property without fostering needless relitigation and further appeals.

With regard to the division of property, it is apparently respondent's impression that our opinion would allow petitioner to present evidence as to all of the unvalued assets. In reviewing the evidence and pretrial orders in this case, we discovered that respondent was permitted to remove numerous items of personal property from the marital residence prior to trial, including various antiques and art objects. The record contains no evidence of their value, yet they were included in the trial court's award to defendant of all personal property "in his possession." As a result, it appeared to us that the value of a great deal of personal property was not considered by the trial court in dividing the property, and we noted the impropriety of its action in failing to require evidence thereon so that an equitable distribution could be made. However, as we clearly stated in our opinion, we can consider only those items raised by petitioner in her appeal (see *In re Marriage of Asch* (1981), 100 Ill. App. 3d 293, 426 N.E.2d 1066); since the only error claimed by petitioner was the trial court's failure to admit evidence of the value of household furnishings purchased by respondent after the separation and the two antique urns, those are the only items which must be considered by the trial court on remand. We do not condone the failure to consider the value of the other personal property awarded to respondent, we state merely that petitioner has waived consideration thereof by failing to raise them on appeal.

Respondent also asserts, however, as he did in his brief on appeal, that these items are so insubstantial that they will have no effect on the related issues of maintenance, child support, and attorney fees, and urges that we proceed to address those issues and thereby avoid needless relitigation thereof. We reiterate that in the absence of any evidence regarding those assets, the record does not support his contention that they are not of substantial value. We have absolutely no idea what value they have; hence, the need for an evidentiary hearing thereon. Nevertheless, we agree that this court should avoid relitigation where possible, particularly in dissolution cases where it is best that the parties finally resolve their often bitter differences and get on with their lives. Therefore, although these issues are usually remanded where the property settlement is reversed because of the close relationship of those questions, we have further considered petitioner's arguments regarding maintenance, child support, and attorney fees, and, with regard to maintenance and child support, we believe that the nature of petitioner's arguments on appeal render further consideration thereof by the trial court unnecessary.

Petitioner contends that the trial court awarded her insufficient marital property and/or maintenance and child support to provide for the reasonable needs of her and the two minor children. She acknowledges that the only evidence of her expenses before the trial court was her affidavit wherein she asserted annual expenses of $47,465.28. However, she admits in her brief on appeal that this figure was an inaccurate reflection of their reasonable needs because it included the living expenses of respondent and their eldest daughter, neither of whom are now residing in the household. She then goes on to concede that only $31,705 of those expenses were allocable to her and the two minor children. Under the judgment, she receives $40,800 per year in maintenance and child support, an amount clearly more than adequate to meet the claimed expenses without even considering petitioner's income from her nonmarital property or from her own possible employment. It is well settled that the amount of an award of maintenance is within the sound discretion of the trial court (*In re Marriage of Dwan* (1982), 108 Ill. App. 3d 808, 439 N.E.2d 1005), and its determination will not be disturbed on appeal unless it has abused that discretion or its decision is contrary to the manifest weight of the evidence (*In re Marriage of Asch* (1981), 100 Ill. App. 3d 293, 426 N.E.2d 1066). In the instant case, the trial court's decision is amply supported by the evidence; moreover, even if there were some deficit, the trial court could reasonably have expected petitioner to seek employment and begin to develop economic independence. See *In re Marriage of Wisniewski* (1982), 107 Ill. App. 3d 711, 437 N.E.2d 1300.

In order to support her contention that the amount awarded is inadequate, petitioner asserts that her affidavit was based on 1978-80 expenses, and asks that we take judicial notice that the cost of living in the Chicago area increased by 34.5% from 1980 to June 1982, when judgment was entered. Therefore, she posits, the trial court could have found at that time that her annual expenses were $42,871. Disregarding the fact that this evidence was never presented to the trial court, we note petitioner concedes that, even at this allegedly inflated rate, her income from maintenance, child support, and nonmarital property was sufficient at the time of judgment to meet those expenses. Nevertheless, she argues, this court should further assume that the cost of living will increase by 9% each year and speculates that sometime in 1983 or 1984, based on these hypothetical figures, her expenses will exceed her income—again assuming that she remains unemployed.

In effect, petitioner contends that the award was sufficient when entered, but we should nevertheless remand it, apparently with direc-

tions that the trial court consider any post-decree rise in the cost of living, as well as possible future inflation rates. She cites no cases to support this unusual request, and it is doubtful that any exist, since such post-decree relief may be sought directly from the trial court. Section 510 of the Act provides that, on motion of either party, the provisions of any judgment respecting maintenance or support may be modified "upon a showing of a substantial change in circumstances." (Ill. Rev. Stat. 1981, ch. 40, par. 510.) Therefore, we need not reverse a concededly adequate award of maintenance and child support based on some hypothetical and highly speculative argument regarding the possible future increase in the reasonable needs of petitioner or the minor children; should those needs in fact increase, petitioner may simply seek modification of the judgment by direct motion to the trial court.

■■ We further note that even if remand of these awards based on evidence of post-decree changes in circumstances were proper, petitioner has not presented such evidence. An increase in the cost of living, standing alone, does not justify an increase in either maintenance (see, *e.g., Bellow v. Bellow* (1981), 94 Ill. App. 3d 361, 419 N.E.2d 924) or child support (see, *e.g., Harner v. Harner* (1982), 105 Ill. App. 3d 430, 434 N.E.2d 465); it must be established that needs have increased. Since petitioner's sole argument is that needs *may* increase at some future date to some unknown level, we do not believe that remand is either necessary or appropriate in the instant case.

■■ Respondent also urges that we resolve the question whether the trial court abused its discretion in denying petitioner's request for attorney fees. However, because her contentions concerning fees may be resolved should the trial court determine that the property division is inequitable, it is our view that this issue should be remanded for further consideration by the trial court in conjunction with any new division of marital property. It is petitioner's position that although the trial court expressed its intention to award the parties sufficient property to pay their own attorney fees, it in fact failed to do so. She points out that, other than $20,000 in cash, all of the marital property awarded to her was nonliquid, consisting as it did of the marital home where she and the minor children are currently residing, the household furnishings therein which they are using, and two used automobiles, at least one of which they need for transportation. Furthermore, she maintains, although she does have some income from nonmarital property, the trial court obviously found this insufficient to meet her reasonable needs, since it awarded her maintenance in addition thereto. Therefore, requiring her to pay $31,000 in attorney fees

will not only strip her of all cash reserves, but will necessitate diversion of funds intended by the court for the support of her and the minor children. While there appears to be some merit to this argument, we cannot realistically assess whether the trial court abused its discretion in finding that petitioner was able to pay her own attorney fees until the question of the property division is fully resolved, since an award of additional property, if any, would obviously alter petitioner's financial position.

For the foregoing reasons, our opinion is modified to provide that, on remand, the trial court shall take evidence with regard to the unvalued property specified herein and make any necessary adjustment in the division of property and reconsider the related issue of attorney fees.

LORENZ and WILSON, JJ., concur.