*In re* MARRIAGE OF MADELINE TEAUSEAU, Petitioner-Appellant, and ROBERT TEAUSEAU, Respondent-Appellee.

Third District No. 3—88—0317

Opinion filed June 8, 1989.

Cynthia M. Raccuglia, of Anthony C. Raccuglia & Associates, of Peru, for appellant.

John Olivero and William LaSorella, both of Peru, for appellee.

PRESIDING JUSTICE WOMBACHER delivered the opinion of the court:

The trial court entered a judgment for the dissolution of the parties' marriage, which included a four-year, $100-per-week maintenance award to the petitioner, Madeline Teauseau. The respondent, Robert Teauseau, was also ordered to pay 55% of the petitioner's attorney fees and costs incurred as a result of the action. In the property distribution, Madeline received 55% of the parties' assets. Robert received 45% and assumed all of the marital debts. The court awarded custody of the parties' daughter to Madeline and ordered Robert to pay $67 per week in child support. The petitioner appeals the four-year limitation on the maintenance award and the percentage of attorney fees granted.

The record reveals that the parties were married for 27 years and had two children, Mark, age 25, and Tammy, age 16. At the time of the dissolution proceedings, Madeline was 46 years old. Her education included graduation from high school and a beauty school. She had worked as a beautician up until the birth of her son, but had not worked since that time.

The record further shows that after Tammy was born, Madeline was hospitalized for physical and mental problems. She had suffered from depression since the age of 15, when her father committed suicide. While hospitalized, she began seeing Dr. Sheen, who prescribed antidepressants and other medication. Between 1971 and 1982, she continued in therapy with Dr. Sheen, but in 1982 began seeing Dr. Remolina, with whom she met about once a month.

Madeline was hospitalized again in 1984 after she ran her car into a tree following an argument with her husband. At that time, she was diagnosed as suffering from a major depressive disorder, a state of depression associated with thoughts of suicide and self-destructive tendencies. Madeline's depression became more severe with the break-

down of her marriage. Dr. Remolina stated in his evidence deposition that he had last seen Madeline in November of 1986, and that although she had made some improvement, she was still unable to cope with situations in life. Madeline testified at trial that she had stopped seeing Dr. Remolina due to financial difficulties following the divorce.

Robert had been self-employed as the owner and operator of Bob's Body Shop for over 14 years. At the time of the dissolution proceedings, he was 47 years old and in good health. Robert testified that he took $300 per week from the business as his salary. He further testified that he had been living with a friend and paid her $150 per month in rent. During the marriage, Robert paid all of the bills and gave Madeline $200 per week for groceries and other items.

Madeline first argues on appeal that the trial court erred in ordering that maintenance would automatically terminate after four years. She does not dispute the amount of the award.

In determining the duration and amount of a maintenance award, section 504(b) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1987, ch. 40, par. 504(b)) provides that the following factors should be considered: the financial resources of the party seeking maintenance; the time necessary for that party to acquire sufficient education or training to enable appropriate employment; the standard of living established during the marriage; the duration of the marriage; the age and the physical and emotional conditions of both parties; the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance; and the tax consequences of the property division upon the respective economic circumstances of the parties.

One objective of the Act is to encourage a formerly dependent spouse to become financially independent in the future, if possible. (*In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338, 461 N.E.2d 447.) This goal, however, must be balanced against a realistic appraisal of the likelihood that the spouse will be able to support herself in some reasonable approximation of the standard of living established during the marriage. (*In re Marriage of Carney* (1984), 122 Ill. App. 3d 705, 462 N.E.2d 596.) Time-limited maintenance which is reviewable at a certain date in the future has been widely accepted by Illinois courts as a logical, practical, and fair way to handle maintenance awards. (See *In re Marriage of Albiani* (1987), 159 Ill. App. 3d 519, 512 N.E.2d 30; *In re Marriage of Asch* (1981), 100 Ill. App. 3d 293, 426 N.E.2d 1066.) A maintenance award rests within the sound discretion of the trial court and will not be disturbed on review unless it constitutes an abuse of discretion or is against the manifest weight

of the evidence. *In re Marriage of Wilder*, 122 Ill. App. 3d at 351, 461 N.E.2d at 456.

In the instant case, we find that the trial court abused its discretion in ordering that the maintenance award would automatically terminate after four years. The evidence showed that Madeline suffered from chronic depression and required psychiatric care. At the time of these proceedings, she was 46 years old and had not been employed for over 24 years. Regarding her ability to work in the future, Dr. Remolina stated in his deposition that, in his opinion, Madeline could not handle full-time employment because she suffered from feelings of insecurity and had difficulty withstanding pressure. Dr. Remolina speculated that Madeline could perform some menial tasks, such as washing dishes. Madeline likewise testified that she did not feel she could handle a full-time job because some days she was so depressed she could not get out of bed.

With regard to the standard of living during the marriage, Robert paid all of the bills and gave Madeline money each week for groceries and whatever else she needed. Madeline testified that she did not have any financial problems while the two of them were living together as husband and wife. They had purchased a home for $110,000 and during the marriage she was able to spend $8,000 to $10,000 per year in 1983 and 1984. She stated that her current monthly expenses were $2,000, including her medication and doctor visits, and that the money she received from the property settlement was her only source of income.

Under these circumstances, it was impermissibly speculative for the trial court to decide that in four years Madeline would be self-sufficient. In light of her emotional problems, her long absence from the labor market, her educational background, and her age, we conclude that the maintenance award should be reviewable at the end of four years rather than automatically terminating at that time. Accordingly, we find that the most appropriate solution is for the trial court to retain jurisdiction so that it can periodically reevaluate the relevant circumstances of the parties and make such modifications in the maintenance award as may be appropriate in the future.

Madeline next argues that the trial court erred in ordering Robert to pay only 55% of her attorney fees and costs. She contends that he should be required to pay the full amount. We note that the trial court initially ordered Robert to pay all of Madeline's fees and costs, but upon reconsideration held that Robert was to pay only 55%.

Attorney fees are the primary obligation of the party for whom services are rendered, and a party seeking an award must

show financial inability to pay the fees and the financial ability of the other spouse to do so. (*In re Marriage of Bauer* (1985), 138 Ill. App. 3d 379, 485 N.E.2d 1318.) The propriety and amount of an award of attorney fees are left to the sound discretion of the trial court, and the award will not be disturbed on appeal absent an abuse of discretion. *In re Marriage of Dwan* (1982), 108 Ill. App. 3d 808, 439 N.E.2d 1005.

The record shows that the total amount of the attorney fees at issue is $5,077.05. After Robert's payment of 55% of that figure, Madeline would be required to pay $2,284.67. Madeline failed to show that she was unable to pay these fees. Her cash assets from the divorce totaled $29,180.13. Payment of the remaining fees and costs would not even come close to exhausting her resources. We therefore cannot say that the trial court abused its discretion in awarding her only 55% of her attorney fees and costs.

Based on our findings, we reverse that portion of the trial court's decision ordering that the maintenance award terminate automatically after four years and remand this cause with instructions that the award be periodically reviewed after four years. The trial court's determination that Robert is to pay 55% of Madeline's attorney fees and costs is affirmed, as is the remainder of the court's judgment.

Reversed in part and remanded; affirmed in part.

STOUDER and SCOTT, JJ., concur.