*In re* MARRIAGE OF BRAD RAYMOND KAMP, Petitioner-Appellant, and LISA DIANE KAMP, Respondent-Appellee.

Third District No. 3—89—0649

Opinion filed July 18, 1990.

Strodel, Kingery & Durree, Associates, of Peoria (Christopher P. Ryan, of counsel), for appellant.

Edmonds & Lauktiis, of Chillicothe (John P. Edmonds, of counsel), for appellee.

JUSTICE BARRY delivered the opinion of the court:

The six-year marriage of Brad Raymond Kamp and Lisa Diane Kamp was dissolved on May 13, 1987. At issue in this appeal is the trial court's classification and distribution of Brad's interest in certain farm property.

The record on appeal reveals the following facts relevant to the inquiry before us. The parties were married on February 14, 1981. At that time Brad and his twin brother, Bruce, were farming a 240-acre parcel owned by Bill Dietrich. The brothers also helped their father, Raymond, farm about 500 acres of land. They used their father's machinery and equipment in both operations. Brad and Bruce maintained a joint bank account and had business accounts with grain elevators and fertilizer dealers in the name "Kamp Brothers."

Brad and Bruce kept a record book of their accounts and shared all farm profits and expenses on a 50/50 basis. Their agreement between 1975 and 1986 was oral. When the brothers weren't farming, Brad took seasonal employment in other businesses.

In 1982, Raymond picked up another 240 acres to farm. Then he and the twins farmed all 980 acres together, sharing expenses and profits equally—a third for Raymond and two thirds for the twins. For bookkeeping purposes, the brothers continued to maintain their own records in a book separate from their father's.

Raymond retired effective February 1984, and Brad and Bruce purchased his farm equipment and machinery for $100,000. According to the testimony of record, the value of the tools and equipment owned by the brothers prior to their father's retirement was minimal. The brothers continued to purchase farm equipment and increased the acreage that they farmed.

Then in January 1986, they entered into a written partnership agreement with John Dietrich. Because of Dietrich's relative inexperience in the farm business, the partners agreed to include approximately $60,000 of "good will" in valuating the Kamp Brothers' machinery and equipment, which they fixed at approximately $288,000. At the time of trial, the Kamp Brothers partnership farmed in excess of 1,800 acres on a tenant basis.

Based on the evidence presented at trial, the court determined that Brad's individual interest in Kamp Brothers partnership was worth $93,578 at the time the parties' marriage was dissolved. The court determined that Brad's interest was marital property and awarded Lisa $31,192.66 as her share of the asset.

In this appeal, Brad argues first that the court erred in finding that his interest in the Kamp Brothers partnership was a marital asset. Brad further contends that in the event this court should determine that the classification of the property was erroneous, then we should resolve as well the parties' dispute over whether the marital estate is entitled to reimbursement from the partnership interest *qua* nonmarital asset.

■ Central to Brad's argument that the partnership was nonmarital property is the fact that the evidence strongly indicates that a partnership known as Kamp Brothers was in existence several years before 1981, when the parties were married. Brad correctly states that in this State a partnership may be formed when two or more persons join forces "to carry on a trade or venture for their common benefit, each contributing property or services, and having a community of interest in the profits. As between the [partners], the

existence of a partnership relation is a question of intention to be gathered from all the facts and circumstances. Factors to consider are profit sharing, written articles of agreement, the mode in which the parties have dealt with each other and others, and the use of the firm name." *Hoover v. Crippen* (1987), 163 Ill. App. 3d 858, 862, 516 N.E.2d 722, 725, citing *Rizzo v. Rizzo* (1954), 3 Ill. 2d 291, 120 N.E.2d 546.

■ Notwithstanding Lisa's suggestion to the contrary, we agree with Brad that the mere fact that the brothers had not entered into a formal written partnership agreement or filed Federal partnership tax returns prior to 1981 does not defeat a finding that a farming partnership existed prior to the parties' marriage.

We further agree with Brad that the partnership interest is non-marital property. Our analysis of the issue is guided by the court's decision in *In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338, 461 N.E.2d 447, and section 503(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 503(a)).

■ Section 503(a) recites that nonmarital property includes "(2) property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, legacy or descent; *** (6) property acquired before the marriage; [and] (7) the increase in value of property acquired by a method listed in [the foregoing] paragraphs ***, irrespective of whether the increase results from a contribution of marital property, non-marital property, the personal effort of a spouse, or otherwise, subject to the right of reimbursement provided in subsection (c) of this Section." (Ill. Rev. Stat. 1987, ch. 40, pars. 503(a)(2), (a)(6), (a)(7).) This statute leaves no doubt but that a business property interest owned by one spouse prior to the parties' marriage, such as the partnership here at issue, is nonmarital property and retains its nonmarital classification despite the addition of a third partner and a significant increase in its value during the marriage.

In an analogous situation, the court in *Wilder* found that stock in a professional corporation was nonmarital property. There, the husband had developed a sole proprietorship practice of retinal surgery over a 10-year period prior to the parties' marriage. Two years after the marriage, the form of the business was changed to that of a professional corporation. The instrument of conveyance executed at the time of the conversion recited that the husband was to receive 50% of the stock of the new corporation and a note for $5,000 in exchange for his office equipment and furniture. As in this case, the wife in *Wilder* argued that the value of the husband's business had

increased significantly during the parties' marriage. Nonetheless, both the trial court and the court on review rejected the wife's position that the husband's business property interest had lost its identity as nonmarital property. *Wilder*, 122 Ill. App. 3d at 343-44, 461 N.E.2d at 452, citing Ill. Rev. Stat. 1981, ch. 40, par. 503(a)(2); *In re Marriage of Smith* (1981), 86 Ill. 2d 518, 427 N.E.2d 1239.

 For purposes of the instant appeal, *Wilder* is further instructive in that the court there observed that in some cases the trial court's classification, even if in error, will not require a reversal if no prejudice is shown, *i.e.*, where the outcome would be no different had the error not occurred. (*Wilder*, 122 Ill. App. 3d at 345, 461 N.E.2d at 451-52.) It is with this proposition in mind that we pursue our analysis of Brad's second issue concerning possible reimbursement from the nonmarital asset.

 Subsection (c)(2) of section 503 recites:

"When one estate of property makes a contribution to another estate of property, or when a spouse contributes personal effort to non-marital property, the contributing estate shall be reimbursed from the estate receiving the contribution notwithstanding any transmutation; provided, that no such reimbursement shall be made with respect to a contribution which is not retraceable by clear and convincing evidence, or was a gift, or, in the case of a contribution of personal effort of a spouse to non-marital property, unless the effort is significant and results in substantial appreciation of the non-marital property. Personal effort of a spouse shall be deemed a contribution by the marital estate. The court may provide for reimbursement out of the marital property to be divided or by imposing a lien against the non-marital property which received the contribution." (Ill. Rev. Stat. 1987, ch. 40, par. 503(c)(2).)

Brad contends that Lisa's efforts on the farm were insignificant and did not contribute to any increase in the value of the partnership. Lisa virtually concedes this point. In fact, during the entire marriage she was occupied with endeavors unrelated to the farming enterprise—either furthering her education or working elsewhere. Lisa's personal contributions to the farm enterprise were, indeed, negligible.

Brad further contends that any appreciation in the farming enterprise during the marriage was due to external factors, rather than his own efforts. The "external factors" he alludes to are: (1) his father's decision approaching retirement to include Brad and Bruce as equal partners to the full extent of his farming operation in 1982-83;

(2) his father's retirement and sale of equipment and machinery to Kamp Brothers in 1984; (3) the acquisition of additional acreage by John Dietrich's father after 1983, which was then leased to Kamp Brothers in anticipation of John's joining the partnership; and (4) John's substantial financial contribution to the partnership in 1986 together with the Kamp Brothers' decreased farm expenditures during the previous spring. In support of this argument, Brad cites *In re Marriage of Morse* (1986), 143 Ill. App. 3d 849, 493 N.E.2d 1088.

■■ *Morse* provides relevant authority for determining reimbursement from nonmarital property to the marital estate under section 503(c)(2). The court there states:

> "[T]he correct procedure to be applied under section 503(c)(2) is to determine whether either spouse, petitioner or respondent, contributed significant personal effort toward the [nonmarital business interest] which resulted in substantial appreciation of that business. [Citations.] Because personal effort of a spouse is deemed a contribution by the marital estate, respondent's contribution of personal effort toward his nonmarital property may entitle the marital estate, not petitioner, to reimbursement from the nonmarital estate receiving the contribution. [Citation.] However, it is the appreciation resulting from significant personal effort, not inflation or other factors external to the marriage which entitles the marital estate to reimbursement. [Citations.] Additionally, in valuing the right to reimbursement, if respondent's salary is found to be reasonable compensation for his efforts, the nonmarital business need not reimburse the marital estate because respondent's salary during the marriage is marital property and, thus, the marital estate has already been compensated. [Citation.]" (143 Ill. App. 3d at 854-55, 493 N.E.2d at 1092.)

*Morse* is analogous to this case in that the husband there owned a nonmarital insurance agency for which the wife performed minimal services during the marriage. On appeal, the court rejected the wife's contention that she, as opposed to the marital estate, was entitled to reimbursement for her contribution to the business during the parties' marriage. In remanding the case for consideration of reimbursement to the marital estate, the court suggested that if the husband's salary during the marriage did not reasonably compensate for his services to the agency, then that portion of the $62,000 appreciation in the business that did not result from "factors external to the marriage" would be available for reimbursing the marital estate under section 503(c)(2).

More recently, the appellate court in *In re Marriage of Tatham* (1988), 173 Ill. App. 3d 1072, 527 N.E.2d 1351, considered a farming operation where the husband managed a 1,006-acre farm prior to and throughout the parties' 19½-year marriage but received no salary from the farm operation during the marriage. Prior to the marriage, the husband had received $800 per month for his managerial efforts. The circuit court had ruled that the farm operation was nonmarital property and ordered reimbursement in the amount of $65,600 to the marital estate, one-half of which was awarded to the wife in the court's property distribution order. On appeal, the husband argued that either the farm was nonowned property not subject to classification as either marital or nonmarital property, or that his efforts did not result in substantial appreciation of the farm. The appellate court disagreed, finding that the husband had maintained the farm and kept it from deteriorating by his personal managerial efforts, and that the property had in fact substantially increased in value despite numerical values introduced to the contrary. Accordingly, the court on appeal affirmed the circuit court's award to wife of $32,800 from the farm.

Lisa argues that neither *Morse* nor *Tatham* supports Brad's position. Lisa points out that *Morse* is distinguishable because, unlike the wife in *Morse*, Lisa earned her own salary, applied it to the couple's support during the marriage and enabled Brad to use their joint account to help finance the farming operation from year to year. She suggests that, like the husband in *Tatham*, Brad's compensation from the farm was primarily reinvested in farm equipment and supplies and did not substantially contribute to the couple's support. Lisa posits that even if this court reverses the trial court's classification of the partnership interest as marital property, the amount due the marital estate from the nonmarital property interest supports the trial court's award to her of $31,192.66; thus, the erroneous classification must be considered harmless error.

■ Having duly considered both parties' arguments, we find them sufficiently meritorious to justify remandment for a further hearing in the trial court. We are not persuaded that the "external factors" cited by Brad are such that the reimbursement provision of section 503(c)(2) would not apply. From the record on appeal it appears that the only assets of the partnership considered in its valuation of roughly $280,000 are equipment and machinery that were purchased, not given to Kamp Brothers. The fortuities of gaining more leased acreage and a third partner provided opportunities to expand the farming operation and increase profits, but it is clear to

us that it was solely through significant personal efforts of the partners that the enterprise in fact increased in value during the parties' marriage from practically nothing to $280,000.

Likewise, we are not convinced based on the record before us that the amount to which Lisa is entitled when the marital estate is properly reimbursed by Brad's share of the partnership would equal the amount the trial court originally awarded her. It does not appear that the court considered Brad's yearly compensation from the farming operation, although there is testimony that the partners periodically drew substantial sums out of the partnership account for their personal use. Clearly, the marital estate has already been compensated to the extent that Brad's personal income represented reasonable compensation for his efforts in the farm operation. The actual amount of Brad's compensation during the marriage, however, cannot be determined on the basis of the record on appeal. Accordingly, we must reject Lisa's "harmless error" argument.

Upon remand, Brad's compensation from the farm partnership should be determined and evaluated in relation to the reasonable value of his personal efforts in increasing the value of the partnership during the marriage. To the extent that Brad's contributions to the farm partnership are found to have been inadequately compensated, the marital estate is entitled to reimbursement from Brad's share of Kamp Brothers, which reimbursement in turn is to be equitably apportioned between the parties.

The judgment of the circuit court is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

HEIPLE, P.J., and SCOTT, J., concur.