*In re* MARRIAGE OF RONALD M. ALBIANI, Petitioner-Appellee, and CORAL IRENE ALBIANI, Respondent-Appellant.

First District (2nd Division) No. 86—0354

Opinion filed July 28, 1987.

Kalcheim & Schatz, of Chicago, for appellant.

Max Tyson, Ltd., of Northbrook, for appellee.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

In an action for dissolution of marriage, Coral Albiani (Coral) appeals from the amount and duration of the trial court's award of unallocated maintenance and child support, its division of the responsibility for the payment of one of their children's advanced education expenses, and its failure to adjudicate the issue of another minor

child's schooling costs. We affirm.

A review of the record discloses that the appellee Ronald Albiani (Ronald) married Coral in 1961 and that he instituted divorce proceedings in 1984. There were three children born of the marriage: their eldest son Roy was 23 years old at the time of the divorce and self-sufficient; their second son Mark was 21 and was preparing to commence his first year of pharmacy school at a cost of $6,500 per year; and their youngest son Cory was 14 and a freshman in high school. Coral was awarded custody of Cory by agreement of the parties. Mark also resided with Coral during vacations and holidays from school.

Ronald was 50 years old at the time of the trial, and for the 24 years prior to trial, he had been employed as a teacher at Niles Township Community High School. He was rated in the seventh out of eight possible salary strata in the school district, and his gross income was $44,840 per year. Approximately $4,500 per year was deducted from that amount as his contribution to the State teachers' retirement system. In 1985, he earned an additional sum of $2,350 for teaching summer school and approximately $1,000 more for tutoring, though he testified that he would not be doing such extra work in the future.

Coral was 47 years old when the trial commenced. She earned a degree in education prior to marrying, and for 10 months after their wedding she worked full time as a teacher. After the birth of their first son in 1962, however, she stopped working and devoted herself to homemaking. She did not work outside their home again until 1970, when she obtained part-time employment on Saturdays only. In 1980 she procured full-time employment when, for a nine-month period, she worked as a teacher's aide. She did not work again until late April of 1983 when she obtained a full-time position as a secretary with the U.S. Army at Fort Sheridan, where at the time of trial she was learning to operate a word processor at a salary of approximately $14,300 per year. She had additional income of $1,000 from teaching miscellaneous courses at the College of Lake County.

The testimony at trial disclosed that the family travelled fairly extensively when they were together, routinely embarking on extended trips for two or three months during the summer. According to Ronald, these trips were modest in scope and cost, and the family often camped outdoors to minimize its expenses. After the parties separated, Ronald and Coral travelled separately. For example, Ronald vacationed in Cape Cod for a month in 1983, toured Italy and France for a month in 1984, and spent six weeks in Collins, Virginia, in 1985,

though he testified that his expenses during these trips were not great. Coral testified that during the two years preceding the trial, she took four or five pleasure trips a year with the children and several other shorter or weekend trips.

At trial, Coral proffered an "Average Monthly Expense Affidavit," in which she asserted that monthly expenses for herself and her minor child Cory totalled $3,398, including the cost of Coral's biweekly psychotherapy sessions and post-separation travel expenses. Coral was never cross-examined concerning the affidavit.

On October 22, 1985, the trial court rendered the decree of dissolution appealed from herein. Regarding the division of marital property, the judge ordered that Coral was to receive the marital home, worth approximately $100,000 free and clear of any encumbrances, together with all the parties' furniture therein of an unspecified value, three vacant lots in Washington, Illinois, appraised at $10,000, Individual Retirement Accounts in her name valued at $6,000, her checking account with an undetermined value, and a credit union account valued at $400. Thus, Coral received property valued at $116,400. On the other hand, Ronald received his interest in the State of Illinois teachers' retirement fund valued at $45,800, an Individual Retirement Account in his name worth $8,000, a certificate of deposit valued at $23,300, stock valued at $2,431.75, his credit union account with a value of $2,740.03, and a Merrill Lynch Ready Asset account in his name worth $5,000. The total value of these assets was $86,471.78.

The controversial portion of the court's order concerned maintenance, child support, and responsibility for their children's education expenses:

"5. As for unallocated maintenance (alimony) and child support, the Petitioner and Counter-Respondent, RONALD M. ALBIANI, shall pay to the Respondent and Counter-Petitioner, CORAL IRENE ALBIANI, the sum of Seven Hundred Fifty Dollars ($750.00) per month, for a period of twenty-four (24) months, at which time the aforementioned award shall be reviewed by a court of competent jurisdiction.

6. That the parties shall pay and be equally responsible for the tuition, room, and board and reasonable transportation expenses in connection with MARK ALBIANI's pharmacy school expenses."

Coral appeals from paragraphs 5 and 6 above, as well as from the court's failure to provide guidelines as to how Cory's future academic costs will be divided.

We first consider whether the trial court abused its discretion in

awarding Coral unallocated maintenance of $750 per month for a period of 24 months, subject to review at the end of that time. According to the Illinois Marriage and Dissolution of Marriage Act, courts should award maintenance only if they find that the spouse seeking such an award lacks sufficient property, including marital property apportioned to him or her, to provide for his or her reasonable needs, and is unable to support himself or herself through appropriate employment, or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home, or is otherwise without sufficient income. (Ill. Rev. Stat. 1985, ch. 40, par. 504(a).) Further, the maintenance order shall be in such amounts and for such periods of time as the court deems just, after consideration of all relevant factors, including: the financial resources of the party seeking maintenance, including marital property apportioned to him or her, and his ability to meet his or her needs independently, including the extent to which a provision for support of a child living with the party includes a sum for the party as custodians (Ill. Rev. Stat. 1985, ch. 40, par. 504(b)(1)); the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment (Ill. Rev. Stat. 1985, ch. 40, par. 504(b)(2)); the standard of living established during the marriage (Ill. Rev. Stat. 1985, ch. 40, par. 504(b)(3)); the duration of the marriage (Ill. Rev. Stat. 1985, ch. 40, par. 504(b)(4)); the age and the physical and emotional condition of both parties (Ill. Rev. Stat. 1985, ch. 40, par. 504(b)(5)); the ability of the spouse from whom maintenance is sought to meet his or her needs while meeting those of the spouse seeking maintenance (Ill. Rev. Stat. 1985, ch. 40, par. 504(b)(6)); and the tax consequences of the property division upon the respective economic circumstances of the parties (Ill. Rev. Stat. 1985, ch. 40, par. 504(b)(7)).

 The purpose of granting the trial court the discretion to authorize rehabilitative or time-limited maintenance is to provide incentive for the spouse receiving support to use diligence in procuring training or skills necessary to attain self-sufficiency. (*In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338, 351, 461 N.E.2d 447.) This goal, however, must be balanced against a realistic appraisal of the likelihood that the spouse will be able to support himself or herself in some reasonable approximation of the standard of living established during the marriage. (*In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 464-65, 426 N.E.2d 1087.) Accordingly, limited maintenance is appropriate only where the spouse is employable at an income which would provide approximately the standard of living enjoyed during

the marriage. (*In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338, 351-52, 461 N.E.2d 447.) Permanent maintenance, on the other hand, is necessary where the spouse is not employable or is employable only at a low income as compared to his or her previous standard of living. (*In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 465, 426 N.E.2d 1087.) However, "[t]he propriety of a maintenance award, as well as the amount and duration thereof, are matters which lie within the discretion of the trial [judge] for whose judgment we will not substitute our own absent an abuse of that discretion which occurs 'only where no reasonable man would take the view adopted by the trial court.'" *In re Marriage of Weinberg* (1984), 125 Ill. App. 3d 904, 916, 466 N.E.2d 925, quoting *In re Marriage of Johnson* (1981), 106 Ill. App. 3d 502, 508, 436 N.E.2d 228.

Coral asserts that a reasonable person weighing the above delineated factors would be constrained to conclude that she should have been awarded permanent maintenance, or at least a reviewable award of greater duration, and also, in view of her reasonable needs and living expenses, that the amount of the award should have been greater. In contrast, Ronald claims that the trial court carefully considered all of the pertinent factors and properly made a fair and just maintenance award. The only case Coral cites in which this court reversed the trial court's determination of maintenance as an abuse of discretion is *In re Marriage of Carney* (1984), 122 Ill. App. 3d 705, 462 N.E.2d 596. In *Carney,* the couple was married 17 years and had three children. The wife had only a high school education and no vocational skills. The husband, on the other hand, was a partner in a Chicago law firm and earned $108,000 in 1981 and $117,000 in 1980. Considering these circumstances, this court held that the trial court abused its discretion by awarding the wife only $30,000 in maintenance over a five-year period, with payments to terminate at that time.

However, we believe *Carney* is factually distinguishable from the case at bar. Coral has a degree in teaching and is clearly better suited for rehabilitation than the wife in *Carney.* Also, the ability of the husband to pay more in *Carney* is readily and easily evident from his salary, whereas Ronald has a relatively modest income by comparison. Finally, and perhaps most importantly, the duration of the maintenance payments in this case is subject to review after two years, whereas in *Carney* the payments were to cease automatically after five years. Clearly, therefore, the *Carney* case is inapposite.

Coral also cites *In re Marriage of Weinberg* (1984), 125 Ill. App. 3d 904, 466 N.E.2d 925, as illustrative of a situation in which an

award of permanent maintenance was appropriate. In *Weinberg,* this court affirmed the trial court's award of $5,000 per month permanent unallocated maintenance where the wife was a 41-year-old custodian of their three adopted children, suffered from relatively poor health, had no marketable skills, and the husband was a successful neurologist. In the case at bar, however, we do not have a husband who is as wealthy as the husband in *Weinberg,* nor do we have a wife whose skills are as unmarketable. Based on the facts before it, the court in *Weinberg* doubtless was justified in upholding the permanent maintenance award. However, we have far from a similar situation herein.

■ We believe that the trial judge's award regarding maintenance, though perhaps favorable, but not eminently so, to Ronald, is not so unreasonable as to compel us to reverse the court's decision on grounds of an abuse of discretion. As to the amount of the award, the court could have reasonably concluded that Coral possessed sufficient property from the division of the marital assets to provide for her reasonable needs. Moreover, with a college degree, the qualifications to teach, and some experience as a secretary, Coral has the potential to find work which would be financially more rewarding than that where she is currently employed. We also find that the duration of the award was reasonable in light of Coral's capabilities for vocational rehabilitation, her financial resources, and the time necessary for her to find employment commensurate with her education, training and skills. We must consider, too, that at the end of the two-year period, maintenance will not automatically be terminated, but rather will be subject to review at that time. Given that the court specifically retained jurisdiction to review the parties' respective circumstances at the end of the maintenance period and at that time to reevaluate the need for further support, we hold that the amount and the duration of the award was not an abuse of discretion.

■ We now turn our attention to the question of whether the trial court abused its discretion in allocating responsibility for payment of their 21-year-old son's pharmacy school expenses equally between the parties. According to the Illinois Marriage and Dissolution of Marriage Act, the trial court may make such provision for the education and maintenance of children, whether of minor or majority age, out of the property and income of either or both of their parents as equity may require, whether application is made therefore before or after such children have attained majority age. (Ill. Rev. Stat. 1985, ch. 40, par. 513.) Further, in making such an award, the court must consider all relevant factors which appear to be reasonable and necessary, including the financial resources of both parents, the standard of

living the child would have enjoyed had the marriage not been dissolved, and the financial resources of the child. Ill. Rev. Stat. 1985, ch. 40, par. 513.

In scrutinizing the fairness of the trial court's allocation of education expenses in the case at bar, we are governed by the same standard of review as we are for determining the justness of the maintenance award *i.e.*, an abuse of discretion occurs only when no reasonable person could agree with the trial court. (*In re Marriage of Weinberg*, 125 Ill. App. 3d 904, 916, 466 N.E.2d 925.) Coral argues that the disparity between the parties' respective incomes is so great that no reasonable person would take the view adopted by the trial court on this issue and that therefore the responsibility for payment of these expenses should have been imposed solely upon Ronald. In support of this argument, Coral asserts that she is employable only at a low income, her future prospects of employment are limited, and it is unlikely that she will ever make more than her present $14,300 per year.

In light of the court's order, Ronald's disposable income before taxes would be approximately $34,690 ($48,190 gross income, assuming he continues to work during the summer and tutor, less approximately $4,500 for contribution to his pension fund less $9,000 for unallocated maintenance), whereas Coral's disposable income would be $24,300 ($15,300 gross income, assuming she continues to supplement her income by teaching courses at the College of Lake County, plus $9,000 unallocated maintenance). We do not consider this disparity between the amounts available to each party for education expenses to be so great that the trial court's division of responsibility for such costs warrants a finding of an abuse of discretion. In addition to disposable income, however, the court also could have considered that Coral was awarded a larger share of the marital property, and that she has the capability of rehabilitating herself vocationally and of earning more money in the future. In view of these considerations, we hold that the trial court's allocation of education expenses is not so disparate that no reasonable person could reach the same conclusion.

■ Finally, we addressed Coral's contention that the trial court abused its discretion by failing to adjudicate the ultimate responsibility for payment of the minor child's education expenses. Coral argues that the trial court's failure to decide how Cory's schooling should eventually be financed constituted an abuse of discretion and that the decision should be reversed and remanded for a clarification of this issue. In response, Ronald points out that if the parties at the time those expenses are incurred are unable to agree as to how the costs

will be shared, the trial court retains jurisdiction to decide the contribution of each party. Indeed, our supreme court has expressed a public policy in favor of the welfare of children, and to this end it has stated that the "court retains jurisdiction of a divorce proceeding at all times to enforce, adjust or modify the original decree in regard to the custody or care of children as changing circumstances warrant." (*Summer v. Borovic* (1977), 69 Ill. 2d 220, 228-29, 370 N.E.2d 1028.) Therefore, should the parties in the future disagree as to how to divide Cory's academic costs, the circuit court clearly retains jurisdiction to settle the dispute.

Accordingly, we affirm the decision of the trial court.

Affirmed.

STAMOS and BILANDIC, JJ., concur.