# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

*In re Marriage of Petersen*, 2011 IL 110984

---

Caption in Supreme Court:

*In re* MARRIAGE OF JANET KELLOGG PETERSEN, Appellant, and KEVIN PETERSEN, Appellee.

Docket No.  110984

Filed  September 22, 2011

Held

(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*)

An ex-wife's petition for her children's college expenses pursuant to the divorce decree's reservation clause sought a modification which was subject to the statutory ban on retroactive support insofar as it requested prepetition expenses, but they could be looked to in determining whether she had depleted her financial resources for purposes of recalculating what percentage share the ex-husband should pay and what his obligation should be for postpetition educational expenses.

Decision Under Review

Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Mark J. Lopez, Judge, presiding.

Judgment

Appellate court judgment affirmed in part and reversed in part;

circuit court judgment reversed;

cause remanded with directions.

Counsel on Appeal     Annette M. Fernholz, of Chicago, for appellant.

Philip J. Nathanson, of Chicago, and Lawrence S. Starkopf, of Starkopf & Silverman, of Highland Park, for appellee.

Justices     JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Thomas, Garman, Karmeier, and Burke concurred in the judgment and opinion.

Justice Theis took no part in the decision.

**OPINION**

¶ 1     Leave to appeal was granted in this case to determine the appropriate means by which to apportion postdissolution decree college expenses where the judgment of dissolution reserved the issue for future consideration.

¶ 2                                     Background

¶ 3     Janet and Kevin Petersen married on September 1, 1983. They had three sons, Gregory (born August 12, 1984), Ian (born October 21, 1985), and Ellis (born April 19, 1989). In June 1996, Janet and Kevin separated. The circuit court of Cook County entered a judgment of dissolution of marriage on August 27, 1999.

¶ 4     The judgment decree awarded Janet sole custody of the three children. Sections 3, 4, and 5 of the judgment addressed the issue of the children's support. Section 3 ordered Kevin to pay Janet monthly child support. Section 4 ordered Kevin to maintain the children on a major medical health insurance plan, with the couple to contribute equally to any medical costs not covered by insurance. Section 5 ordered Kevin to continue his life insurance coverage for as long as he remained obligated to support Janet or the children. With respect to Kevin's obligation to the children, Kevin was to name the children the irrevocable beneficiaries of the policy "until Kevin's obligation to support them (including any obligations for colleges expenses) is terminated." Section 6 of the decree included the following language:

   "The Court expressly reserves the issue of each party's obligation to contribute to the college or other education expenses of the parties' children pursuant to Section 513 of the Illinois Marriage and Marriage Dissolution Act."

The decree further noted that Janet and Kevin "agreed to and adopted" a "Custody and Visitation Agreement" which was incorporated into the final decree. That agreement stated:

   "Janet shall consult Kevin on all issues relating to the children's education. Kevin shall be granted at least 48 hours notice to consult with Janet prior to any decision being made concerning any said educational issue. Janet shall have the final decision

and authority to make all educational decisions."

The decree further stated that the court expressly retained jurisdiction of the cause for the purpose of enforcing all the terms of the judgment.

¶ 5    On May 17, 2007, Janet filed a petition to allocate the college expenses of the children. In the petition, she asked for contributions from Kevin for the tuition and expenses incurred by their son Gregory, who attended Cornell University beginning in 2002, and who had graduated in 2006. She also asked for reimbursement of the tuition and expenses of their son Ian, who had started his college studies at Wake Forest University in 2004. In 2005, Ian transferred to the University of Texas, where he was pursuing an engineering degree at the time of the petition's filing. Janet also sought a ruling on the future college tuition and expenses of their son Ellis, who was to graduate from high school in May 2007 and had been admitted to California Polytechnic State University for the semester beginning in the fall of 2007.

¶ 6    After a hearing, the circuit court ordered Kevin to pay 75% of the total college expenses for all three children. Ultimately, the court determined the amount Kevin owed was $227,260.68 for past college expenses, and $46,290.91 for Ian's and Ellis's expenses for the 2008-09 school year. Kevin appealed.

¶ 7    The appellate court affirmed in part and reversed in part. 403 Ill. App. 3d 839. The appellate court held that Janet's 2007 petition constituted a modification to the parties' 1999 divorce decree. Applying section 510 of the Illinois Marriage and Dissolution of Marriage Act, the court held that the circuit court could not order Kevin to pay for those college expenses that predated the filing of Janet's petition. The appellate court further held that the circuit court did not err when it determined that Kevin should pay 75% of his children's college expenses. This appeal followed upon our allowance of Janet's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Feb. 26, 2010).

¶ 8                                    Analysis

¶ 9    Janet maintains that the appellate court erred in precluding her from obtaining contributions from Kevin for expenses that predate the filing of her petition. She argues that the appellate court improperly applied section 510 of the Illinois Marriage and Dissolution of Marriage Act (the Act) to her. The issue presents a question of law concerning the interpretation of a statute. Our review is therefore *de novo*. *In re Andrew B.*, 237 Ill. 2d 340, 348 (2010).

¶ 10    The Act contains various provisions which govern the numerous issues that arise during divorce proceedings, such as the distribution of marital property (750 ILCS 5/503 (West 2006)), spousal maintenance (750 ILCS 5/504 (West 2006)), and child custody (750 ILCS 5/601 (West 2006)) and support (750 ILCS 5/505, 513 (West 2006)). The Act envisions that the parties may amicably agree on many of these issues and allows for agreements to be incorporated into the judgment of dissolution entered by the court. 750 ILCS 5/502 (West 2006). The Act also recognizes that because circumstances do not always remain the same as they were on the date a judgment of dissolution is entered, modifications may be necessary. 750 ILCS 5/510 (West 2006). Section 510 provides the statutory framework for

modifications, depending on the issue for which the modification is sought. 750 ILCS 5/510 (West 2006). Section 510 also states that modifications are not retroactive. Specifically, the statute provides:

"Except as otherwise provided ***, the provisions of any judgment respecting maintenance or support may be modified only as to installments accruing subsequent to due notice by the moving party of the filing of the motion for modification ***." 750 ILCS 5/510(a) (West 2006).

The appellate court relied on this language in determining that Kevin's obligation for college support could not begin prior to May 17, 2007, the date on which Janet filed her petition.

¶ 11    Janet asserts two different bases as to why section 510 of the Act is inapplicable. She first contends that section 510 only pertains to child support payments authorized by section 505 of the Act and not to education payments, such as those at issue here, ordered pursuant to section 513. We disagree.

¶ 12    At one point in Illinois law, divorced parents were obligated only for the "support" of their minor children. "Support" in this statutory context included the duty to provide for the reasonable and necessary physical, mental, and emotional needs of the child until the age of majority. See 750 ILCS 5/505 (West 2006). However, a divorced parent's obligation to his or her children increased in 1982, when the General Assembly amended the Act so that the circuit court, as equity may require, "may" order "either or both parties" to a divorce to provide for the educational expenses of nonminor children. 750 ILCS 5/513(a) (West 2006); Ill. Ann. Stat., ch. 40, ¶ 513, Supplement to Historical and Practice Notes, at 278 (Smith-Hurd Supp. 1992). Indeed, section 513 itself speaks in terms of "support" for the parties' children who "have attained majority." 750 ILCS 5/513(a) (West 2006).

¶ 13    Given the statute's express language and its history, it is not surprising that Illinois courts have consistently held that section 513 expenses are a form of child support to be read in conjunction with section 505. See *In re Marriage of Sreenan*, 81 Ill. App. 3d 1025 (1980); *In re Marriage of Coram*, 86 Ill. App. 3d 845 (1980); *In re Marriage of Waller*, 339 Ill. App. 3d 743 (2003). See also *In re Marriage of Truhlar*, 404 Ill. App. 3d 176 (2010). "Support" as that term is used in section 510(a) means amounts required to be paid under a judgment, decree, or order issued by a court of competent jurisdiction, for the support and maintenance of a child, including a child who as attained the age of majority under section 513. In fact, section 510 specifically includes language which references both section 505 and section 513. We therefore find no merit in Janet's argument that college expenses do not constitute "child support" and that, as a consequence, section 510 is inapplicable.

¶ 14    The real dispute amongst the parties, however, is not whether section 513 expenses are a form of child support, but rather whether the circuit court "modified" the dissolution decree as that term is used in section 510, where the original decree reserved the issue of educational expenses. Janet maintains that because the 1999 decree did not set out an actual monetary award concerning educational expenses, her petition did not seek to "modify" the 1999 decree, as that term is used in section 510. Kevin contends that because the judgment did not obligate him to provide educational expenses, Janet's petition sought to "modify" the 1999 decree so as to come within the purview of section 510.

-4-

¶ 15    The primary objective in construing a statute is to give effect to the legislature's intent, presuming the legislature did not intend to create absurd, inconvenient, or unjust results (*In re Madison H.*, 215 Ill. 2d 364, 372 (2005)). Accordingly, courts should consider the statute in its entirety, keeping in mind the subject it addresses and the legislature's apparent objective in enacting it (*People v. Davis*, 199 Ill. 2d 130, 135 (2002)). The best indication of legislative intent is the statutory language, given its plain and ordinary meaning (*People v. Jones*, 223 Ill. 2d 569, 581 (2006)). When the statutory language is clear and unambiguous, it must be given effect without resort to other tools of interpretation (*Jones*, 223 Ill. 2d at 581).

¶ 16    The plain and ordinary meaning of the verb "modify" is to "make a basic or important change in : ALTER." Webster's Third New International Dictionary 1452 (1993). Black's Law Dictionary also states the word conveys the notion of "change" or "alteration" of a term. Black's Law Dictionary 1095 (9th ed. 2009). Given these commonly understood usages of the word "modify," we hold that the legislature intended the verb "modify" as it is used in section 510 to connote any action taken to adjust, change or alter the obligations of one or more of the parties subsequent to entry of the final divorce decree.

¶ 17    In our view, the parties' original 1999 divorce decree did nothing more than maintain the status quo between the parties with respect to the issue of college expenses by not making an award at that time, even though the circuit court was authorized by statute to do so. This is not unusual in divorce cases. Children are often too young, at the time of a divorce, to properly anticipate whether college expenses will be needed. See *In re Marriage of Albiani*, 159 Ill. App. 3d 519 (1987) (acknowledging that college expenses may properly be reserved in case of 14-year-old).

¶ 18    Prior to the filing of Janet's petition, Kevin had no concrete obligation to provide for educational expenses under the decree. Janet, however, in 2007 sought to change the status quo between the parties and alter Kevin's obligations under the decree. That action brought her within the purview of section 510, which requires only a showing of a "substantial change in circumstances." 750 ILCS 5/510(a) (West 2006). The Act provides that provisions of any judgment respecting maintenance or support may be modified "only as to installments accruing subsequent to due notice" by the party seeking the change. *Id.* Under the plain language of the statute, a retroactive modification is limited to only those installments that date back to the filing date of the petition for modification. This insures that the respondent is put on notice prior to any change being made with respect to the original child support and expense obligations. *In re Marriage of Henry*, 156 Ill. 2d 541, 544 (1993). In light of the statutory language, the appellate court therefore correctly held that support could not be ordered for expenses which predated the filing of Janet's petition.

¶ 19    In addition to the plain language of the statute, other reasons support today's conclusion. As noted earlier, the Act contemplates that the status quo will change from time to time after a divorce decree has been finalized, especially where children are concerned. This court has recognized that a court which has issued a final divorce decree retains jurisdiction of the proceeding at all times to enforce, adjust, or modify the original decree in regard to the custody and care of children, as the changing circumstances may warrant. *Sommer v. Borovic*, 69 Ill. 2d 220 (1977) (and cases cited therein). Since section 510 codifies this long

held notion and provides the statutory framework within which to do so, we believe it appropriate to employ it in these circumstances.

¶ 20    Moreover, although this court has never addressed the "reservation as modification" issue, our appellate court has, and it has consistently held such postdecree actions as constituting modifications under section 510. See, *e.g.*, *In re Marriage of Kraft*, 217 Ill. App. 3d 502 (1991). One of the first cases to address the issue, *Nerini v. Nerini*, 140 Ill. App. 3d 848 (1986), contains a thorough treatment of the issue, although the case concerned the reservation of child support for minor children. The court first noted that section 505 (like section 513) allows a court the discretion to enter a college support award against either or both parties. However, by "reserving" the issue, the court was exercising its discretion to not make an award at that time, even though the court had personal jurisdiction over both parents and had the authority to make an award. *Nerini*, 140 Ill. App. 3d at 854. The court thus distinguished between *in rem* and *in personam* divorce decrees. Under Illinois law, unless and until there is valid *in personam* jurisdiction over the support obligor, no child support order can be entered. See *Gleiser v. Gleiser*, 402 Ill. 343 (1949) (holding that a decree of divorce requiring the payment of alimony and child support is a decree *in personam*, and therefore the court did not have jurisdiction over the defendant to order him to pay support and alimony when he was served with summons outside of Illinois). In *Nerini*, the court had jurisdiction over the parents, but chose not to make an award that it was otherwise authorized to make. Where personal jurisdiction is lacking, the reservation is necessary as a matter of law. When personal jurisdiction over both parties exists, however, the reservation serves as a discretionary decision to not make any award at that time. *Id.* For that reason, the procedure contemplated in section 510, which prohibits retroactive support, had to be followed. *Id.*

¶ 21    *Conner v. Watkins*, 158 Ill. App. 3d 759 (1987), is also instructive. There, the circuit court entered a divorce decree in 1972. The decree reserved the issues of child custody and support until the final disposition of a pending juvenile court action concerning the children. That proceeding ended in December 1973, with the juvenile court granting the children's guardian the authority to place them with their mother. In April 1986, the mother petitioned the circuit court for an award of child support. She sought reimbursement from the father for child support expenses dating back to December 1973. The trial court refused to order support for any period predating the filing of the petition based upon section 510, which prohibits retroactive support. The appellate court upheld the order, noting that the petition served to modify the original decree because no award of support was made in the original judgment. *Conner*, 158 Ill. App. 3d at 762.

¶ 22    These cases establish that Illinois decisional law has since 1986 consistently regarded the actions taken pursuant to reservations clauses to be modifications under section 510 subject to the prohibition of retroactive support. It is difficult for this court to gauge how many couples might have constructed their dissolution decrees in reliance of this law, which to date has not been changed by the legislature in any way.[1] Given the construction of section 510

---

[1] The only change the legislature has made to the Act is to amend section 505 in order to address the *in rem* decrees noted in the discussion above.

by our appellate court, it is reasonable to believe that parties to divorce actions presume that issues that are reserved in the original dissolution decree will be adjudicated in the manner set forth in section 510. Although Janet contends that other courts in other states do not consider the resolution of reserved issues as a modification of the original decree, we do not believe those cases are helpful in that they address different statutory provisions from those contained in our Act. Principles of settled expectations weigh against overruling the appellate court cases in the manner Janet suggests.

¶ 23 Finally, our legislature has stated that the Act is to be liberally construed so as to promote its underlying purposes. One such purpose is to "mitigate the potential harm to the spouses and their children caused by the process of legal dissolution of marriage." 750 ILCS 5/102(4) (West 2006). A second is to "secure the maximum involvement and cooperation of both parents regarding the physical, mental, moral, and emotional well-being of the children during and after the litigation. " 750 ILCS 5/102(7) (West 2006). We believe the purposes of these provisions are met where there is a prompt resolution of reserved issues of support pursuant to section 510. To hold as Janet suggests would allow one spouse to wait indefinitely until seeking to act pursuant to the reservation clause. We fail to see how creating such an open-ended obligation on a spouse comports with the purposes of the Act. Rather, we are of the view that the framework envisioned by section 510 provides the best way to conduct postdecree proceedings which deal with issues reserved at the time the final decree is entered.

¶ 24 Conclusion

¶ 25 When the circuit court ordered Kevin to pay 75% of all college education expenses, it did so under the mistaken belief that its order would apply to such expenses that predated the filing of Janet's petition. We therefore believe it best to reverse both the circuit court's orders, that which referenced expenses that predated the date Janet filed her petition, and that which referenced expenses incurred subsequent to the filing date. The reversal of these circuit court orders in turn requires reversal of that portion of the appellate court judgment finding that the circuit court did not abuse its discretion in setting Kevin's share at 75%. As noted throughout this opinion, a circuit court may order either or both parties to pay educational expenses "as equity may require." 750 ILCS 5/513(a) (West 2006). The factors to be considered include, amongst other things, the financial resources of both parents. 750 ILCS 5/513(b)(1) (West 2006). We therefore remand this matter to the circuit court with instructions to recalculate Kevin's obligation for educational expenses, taking into account "all relevant factors that appear reasonable and necessary" (750 ILCS 5/513(b) (West 2006)) including the fact that Janet's financial resources may have been depleted by the cost of Gregory's four years of college expenses and Ian's expenses from 2004 through May 2007.

¶ 26 Appellate court judgment affirmed in part and reversed in part;

¶ 27 circuit court judgment reversed;

¶ 28 cause remanded with directions.