NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 180673-U

NO. 3-18-0673

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 10, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from |
| JOANN O'BRIEN, | ) | Circuit Court of |
|   Petitioner-Appellee, | ) | Kankakee County |
|   and | ) | No. 16D107 |
| JOHN O'BRIEN, | ) | |
|   Respondent-Appellant. | ) | Honorable |
| | ) | Michael D. Kramer, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Presiding Justice Steigmann and Justice Knecht concurred in the judgment.

**ORDER**

¶ 1  *Held*: The appellate court affirmed, concluding the trial court did not err (1) in its disposition of assets and liabilities in the marital estate or (2) when it ordered John to reimburse Joann for college expenses paid for their daughter.

¶ 2  In October 2018, the trial court entered a judgment of dissolution of marriage between petitioner, Joann O'Brien, and respondent, John O'Brien. In the judgment, the court valued assets and divided property, including field tile and a Morton building installed on John's father's farm. The court also ordered John to reimburse Joann for college expenses paid for one of their daughters.

¶ 3  John appeals, arguing the trial court erred when it (1) found the cost of the field tile and Morton building were marital assets and ordered reimbursement to the marital estate from John's assigned assets and (2) ordered John to reimburse Joann for college expenses paid for their daughter. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5            In November 1986, the O'Brien's married. Two children were born during the marriage, Colleen and Jacqueline. In March 2016, Joann filed a petition for dissolution of marriage. At that time, Colleen was emancipated, and Jacqueline was a student pursuing a six-year pharmacological degree at Southern Illinois University Edwardsville (SIUE). John was 53 years old and Joann was 55. Both were employed at Shapiro Developmental Center. In her petition for dissolution, Joann sought her just proportion of the marital property, her nonmarital property, maintenance, the educational support of Jacqueline, and attorney fees.

¶ 6                        A. September 2017 Pretrial Hearing

¶ 7            At a pretrial hearing, both parties testified to the formation of a January 2016 partial settlement agreement. The agreement allowed John to obtain a loan to pay for a Morton building he erected on his father's farmland. During the marriage, the parties acquired 80 acres of farmland. In the agreement, the parties transferred the 80 acres from joint tenants to tenants in common and agreed that each owned an undivided one-half interest in the 80 acres. John agreed to pay Joann cash rent at a reasonable commercial rate for her undivided one-half interest in the 80 acres. The parties also agreed to keep their own State of Illinois Retirement System pensions in the event of a dissolution.

¶ 8            Joann testified that the parties agreed to split the cost of Jacqueline's college education where John, Joann, and Jacqueline would each pay one-third of the expenses. Joann also testified that the parties agreed that Joann was to receive one-half of the farm account. Further, Joann testified John agreed to transfer one-half of his Valspar 401K account to her and she agreed to transfer to John one-half of her deferred compensation account. Joann testified the parties also agreed that she was to receive one-half of the cash value of the life insurance policies

and John would pay her $250 per acre in cash rent during 2016 and 2017 on her 40 acres of farmland.

¶ 9        Joann testified that the parties agreed that John would pay the insurance on Jacqueline's car and her health insurance. John and Joann agreed to divide the proceeds of pending litigation, as well as sell the marital residence and divide the proceeds. Joann testified that John also agreed to pay her one-half of the net proceeds from the crops grown during the 2017 season.

¶ 10        Joann testified that there was no agreement regarding the disposition of the field tile installed on John's father's farm or the Morton building built on John's father's farm. Joann also testified to no agreement regarding the value of the farm machinery. Joann asked the court to order reimbursement to her for one-half of the value of the field tile, Morton building, and the farm machinery.

¶ 11        John testified that he heard the agreement as recited and agreed with Joann's testimony regarding the agreements between Joann and him. However, John disagreed with the valuation of the farm machinery and disputed that he should reimburse Joann for the Morton building or the field tile installed on his father's farm. John testified he should not be required to pay Joann maintenance. When asked by his attorney, "But aside from that, when we were sitting talking, we were going through what we agreed to; what they recited is what you agreed to, correct?" John answered, "Correct."

¶ 12                    B. May 2018 Hearing

¶ 13        In May 2018, the case proceeded to a final hearing held over two consecutive days. During the hearing, John and Joann both testified to the partial settlement agreement where both parties agreed that each party had an undivided interest in 40 acres of the farmland

they owned as tenants in common. Further, the parties agreed that each party would keep their respective pensions. The parties also agreed to divide equally the proceeds of a Synergy lawsuit and John's Valspar 401K account with a net asset value of $350,000. Joann testified her deferred compensation account totaled $114,000, which John agreed to split equally. The parties agreed to split equally John's life insurance policies with a cash value of $20,000. Finally, the parties agreed to split equally the proceeds from the sale of the marital residence.

¶ 14 During the hearing, John and Joann disagreed as to the existence of an agreement between the parties regarding Jacqueline's college expenses. Joann claimed that she, John, and Jacqueline entered into an agreement that each person would pay one-third of Jacqueline's college expenses, resulting in each person paying $12,000 per year. Joann testified that John paid his share the first year and she paid John's share for each year since, with one year remaining. Joann claimed John owed her $48,000 as reimbursement toward Jacqueline's college expenses.

¶ 15 John represented he paid his share of Jacqueline's college expenses for two years. John claimed he quit paying because his relationship with Jacqueline soured in March 2016. When asked about providing proof of payment, he claimed he paid for two years but acknowledged he only had proof of payment of $12,000 for one year. John also acknowledged that he agreed to match Joann's contribution for Jaqueline's college expenses but insisted it was a year-by-year agreement. John indicated the agreement was not set in stone. John recalled he agreed to pay for Jaqueline's colleges expenses for her second year, but he could not identify when that discussion occurred. John did agree to pay for Jacqueline's car insurance and health insurance.

¶ 16        John and Joann also disagreed about Joann's request for reimbursement to the marital estate for payments made by John for field tile and a Morton building installed on his father's farm. Joann testified that where the field tile and the Morton building were acquired with marital funds and installed on nonmarital property, John should reimburse the marital estate. Joann represented the Morton building cost $205,600 to build and was constructed on nonmarital property. The money used for the Morton building came from the farm account, marital funds. Joann claimed she did not agree to such an expenditure of marital funds. Further, Joann indicated the field tile installation costs came from marital funds totaling $105,000.

¶ 17        John testified that he installed field tile on his father's property in 2012, 2014, and 2015. He disputed the cost of the Morton building, which he asserted cost $145,000. However, when presented with the total costs paid to all contractors, John acknowledged the costs as testified to by Joann were correct. John admitted paying for the field tile and the Morton building from the farm account. John testified the field tile cost $100,000 and was to improve the crop yield on his father's property. John testified he hoped to buy his father's farm in the future and, if not, he is an heir and expected to inherit the farm along with his brothers and sisters.

¶ 18        Other issues arose during the hearing. Joann introduced a farm machinery equipment appraisal completed by equipment dealer Thomas Witvoet. The appraisal was admitted into evidence by agreement. Witvoet appraised the fair market value of the farm implements at $352,300. A mower and four trucks were not available for the appraisal, but estimates were provided suggesting the value of the items.

¶ 19        John testified he had been a farmer for a long time, had a four-year degree in agriculture, and was familiar with the cost of farm implements and equipment. John disputed

Witvoet's appraisal, arguing certain items were appraised too high. John valued the farm machinery at $282,800, and the mower and trucks at $32,350, for a total of $315,050.

¶ 20 The farm income and the growing crops were also an issue. Joann testified she had not received any farm income from the farm operation since 2016. John admitted not giving Joann any money from the farm income for 2016 or 2017. John testified he paid some of the expenses for the 2018 growing crop but did not yet know the total amount. John also testified he did not pay Joann cash rent for 2017 or 2018. John expressed the most he would pay in cash rent was $200 an acre.

¶ 21 After hearing the evidence and closing arguments, the trial court took the matter under advisement. However, the trial court later requested additional evidence.

¶ 22 C. July 2018 Hearing

¶ 23 At a July 2018 hearing, the trial court heard additional evidence regarding subpoenaed records for grain sales, grain storage, and loans. The court reviewed various grain storage and sales documents, along with bank records and farm expense bills. At the hearing, the parties determined that John had an outstanding loan in the amount of $103,750 for payments for the Morton building. Joann agreed that the amount should be deducted from the request for reimbursement for the Morton building. The parties established the value of the Morton building, on a cost basis, as $101,850.

¶ 24 D. September 2018 Hearing

¶ 25 After hearing closing arguments in August 2018, the trial court, at a September 2018 hearing, informed the parties of its decision. The court declined to award maintenance to either of the parties. The court agreed with the stipulation that the parties split John's Valspar 401K account, the Synergy litigation and net proceeds, and the proceeds from the marital

residence sale. The court awarded each of the parties 40 acres as tenants in common. The court ordered John to pay the debt on his 40 acres. The court awarded each party their respective pensions benefits. The court also ordered John to pay Jacqueline's car and health insurance.

¶ 26    Regarding disputed issues, the court found:

"that the farm machinery, trucks, mower, farm bank accounts, Joann—Jacqueline's [*sic*] deferred comp, the life insurance policies—Joann's deferred comp—I'm sorry—life insurance policies, cost of the Morton building, the net cost, and the cost of field tile, and the growing crops for '16, '17, and '18 [were] all marital assets."

The court valued the marital assets at $1,054,452. The court found an operating loan of $186,452, a loan of $12,000, and a vehicle loan of $5000 were all marital debts, totaling $203,452. The court calculated the net estate value at $850,998.00, with each party awarded half—$425,499. The court awarded Joann her deferred compensation account and subtracted that from her share, leaving her $311,499. Finally, the court allowed Joann's claim for reimbursement for college tuition for Jacqueline in the amount of $48,000. The court found John owed Joann $359,499.

¶ 27                    E. The Trial Court's October 2018 Order

¶ 28    In October 2018, the trial court entered a written order for judgment of dissolution of marriage. The court incorporated its September 2018 decision into the order. Further, the court awarded John the farm income from 2016, 2017, and 2018. However, the court ordered John to pay Joann cash rent of no less than $200 per acre on her 40 acres.

¶ 29                        F. Motion to Reconsider

- 7 -

¶ 30    On November 7, 2018, John filed a motion to reconsider. In the motion, John argued (1) the interest in the 80 acres of farmland needed to be designated marital or nonmarital property and (2) the court wrongly characterized the Morton building and field tile as nonmarital property, or in the alternative, erred in ordering reimbursement to the marital estate for the property where Joann benefited from the Morton building and field tile. On November 8, 2018, John filed his notice of appeal. On November 13, 2018, Joann filed a motion to strike John's motion to reconsider because he filed a notice of appeal on November 8, 2018. In February 2019, Joann withdrew her motion to strike John's motion to reconsider. In February 2019, the court denied the motion to reconsider.

¶ 31    This appeal followed.

¶ 32                              II. ANALYSIS

¶ 33    On appeal, John argues the trial court erred when it (1) found the cost of the field tile and Morton building were marital assets and ordered reimbursement to the marital estate from John's assigned assets and (2) ordered John to reimburse Joann for college expenses for their daughter. We address these arguments in turn.

¶ 34                         A. Property Disposition

¶ 35    John argues the trial court erred in its disposition of assets in the marital estate when it found the field tile and Morton building installed on his father's farm constituted marital assets as opposed to marital expenses and ordered John to reimburse the marital estate for those assets. Joann argues the trial court properly identified the field tile and Morton building as marital assets and did not err in its distribution of the marital property. We affirm.

¶ 36    "All the property of the parties to a marriage belongs to one of three estates, the estate of the husband, the estate of the wife, or the marital estate." *In re Marriage of Werries*,

- 8 -

247 Ill. App. 3d 639, 641-42, 616 N.E.2d 1379, 1383 (1993). "In order to distribute property upon the dissolution of marriage, the trial court first must classify the property as either marital or nonmarital property." *In re Marriage of Henke*, 313 Ill. App. 3d 159, 166, 728 N.E.2d 1137, 1143 (2000). "The determination of whether property is to be classified as marital or nonmarital is governed by section 503 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/503 (West 1998))." *Id.* at 166-67. A trial court's classification will not be disturbed on appeal unless it is contrary to the manifest weight of the evidence. *Id.* at 166.

¶ 37        After the trial court determines the classification of the property, the court must establish the valuation of the marital property. *In re Marriage of Schneider*, 214 Ill. 2d 152, 171, 824 N.E.2d 177, 188 (2005). "A trial court's determination of the value of marital assets in a division-of-property proceeding will not be disturbed on appeal unless it is against the manifest weight of the evidence." *In re Marriage of Vancura*, 356 Ill. App. 3d 200, 203, 825 N.E.2d 345, 349 (2005).

¶ 38        While a reviewing court applies the manifest weight of the evidence standard to the factual findings for each factor on which a trial court may base its property disposition, an abuse of discretion standard is applied in reviewing the court's final property division. *Id.* at 205. Section 503(d) of the Act requires the trial court to divide the couple's marital property between them in "just proportions considering all relevant factors." 750 ILCS 5/503(d) (West 2016). "The distribution of marital assets is within the trial court's discretion, and the trial court's distribution will not be disturbed absent an abuse of discretion." *Henke*, 313 Ill. App. 3d at 175. "A trial court abuses its discretion only where no reasonable person would have distributed the property as the trial court." *Id.* (citing *Werries*, 247 Ill. App. 3d at 649).

¶ 39        Here, John argues the trial court erred in its disposition of property where the court determined the field tile and the Morton building were marital assets and ordered John to reimburse the marital estate for the cost of those assets.  John argues reimbursement for the field tile and Morton building is akin to a dissipation claim.  "Dissipation is the use of marital property for the sole benefit of one of the spouses for a purpose unrelated to the marriage occurring at a time that the marriage is undergoing an irreconcilable breakdown."  *In re Marriage of Frey*, 258 Ill. App. 3d 442, 448, 630 N.E.2d 466, 471 (1994).  We find the use of marital funds to purchase the field tile and Morton building was not akin to dissipation.  Neither parties' nonmarital property directly benefited from the installation of the field tile and the Morton building on John's father's farm.

¶ 40        Moreover, John argues the installation of the field tile and the Morton building were expenses, not assets, and that the marital estate or farm enterprise benefited from the investments; thus, John was not required to reimburse the marital estate for the expenses.  John did not dispute that he paid for the field tile and the Morton building from the farm account.  He testified that the field tile improved the crop yield on his father's farmland and that the Morton building would allow for cheaper storage which in turn would reduce costs, and, therefore, contribute to higher farm profits.  Significantly, John admitted he failed to give Joann any money from the farm income for 2016 or 2017.  John testified he paid some of the expenses for the 2018 growing crop but did not yet know the total amount.  John also testified he did not pay Joann cash rent for 2017 or 2018.

¶ 41        The trial court found the field tile and the Morton building to be marital assets where marital funds were used to purchase the improvements.  Then, the court valued the field tile in the amount of $105,000.  The court valued the Morton building in the amount of $205,600

- 10 -

but placed a net value on the Morton building in the amount of $101,850, considering the debt incurred after the completion of the building. The trial court considered the benefit of the field tile and the Morton building to the farming enterprise and awarded the value of the assets to John. The court awarded the farm enterprise to John in its entirety. We find the purchase of the field tile and the Morton building using marital funds worked to, as asserted by John, "improve it and get better crops and thereby improving the farming operation." Thus, the court did not err in awarding the value of those assets to one party and offsetting other assets to assure a just distribution. The court's classification of the field tile and the Morton building as marital assets and the valuation of the assets and liabilities were not against the manifest weight of the evidence.

¶ 42        John argues the trial court erred in it disposition of marital assets and liabilities. Specifically, John argues the court failed to consider the distribution of assets and liabilities in light of the partial settlement agreement.

¶ 43        In January 2016, the parties created the partial settlement agreement where both parties as tenants in common agreed that each party owned an undivided one-half interest in the 80 acres. The parties also agreed to each keep their individual pensions in the event of a dissolution. The agreement allowed John to obtain a loan to pay for a Morton building he erected on his father's farmland.

¶ 44        During the September 2017 pretrial hearing, John never objected to the terms of the partial settlement agreement. Further, at the May 2018 hearing on all matters, John failed to argue the partial settlement agreement was unfair to him. It is only now on appeal that John argues the trial court failed to consider all the marital assets and liabilities in light of the partial settlement agreement. John argues based on the partial settlement agreement that Joann grabbed

- 11 -

a bigger share of the homestead before the race started. We disagree and find that he knowingly and intelligently entered into the partial settlement agreement which the trial court properly accepted and adopted.

¶ 45        Moreover, the evidence shows the trial court considered all the evidence when it divided the marital assets and liabilities, including the partial settlement agreement. After hearing all the evidence and closing arguments presented by counsel in May 2018, the trial court even requested additional evidence regarding subpoenaed records for grain sales, grain storage, and loans. Given these circumstances, and in light of the factors set forth in section 503(d) of the Act, we cannot say that the court abused its discretion in distributing the marital assets.

¶ 46                             B. College Expenses

¶ 47        John also argues the trial court erred when it ordered him to reimburse Joann $48,000 for Jacqueline's college expenses paid during the course of the marriage prior to the filing of Joann's petition for dissolution of marriage. Joann argues the parties entered into an agreement to each pay one-third of Jacqueline's colleges expenses. Joann sought reimbursement from John in the amount of $48,000.

¶ 48        In the Fall of 2013, the parties' daughter, Jacqueline, began a six-year pharmacological degree at SIUE. In March 2016, Joann filed for divorce from John. In her petition for dissolution of marriage, she sought, in relevant part, the educational support of Jacqueline.

¶ 49        At a September 2017 pretrial hearing, Joann testified to an agreement between the parties where they agreed to split the cost of Jacqueline's college education where John, Joann, and Jacqueline would each pay one-third of the expenses. At the hearing, John testified he heard Joann's testimony and agreed with her recital of the agreement.

¶ 50       However, at the May 2018 hearing on all matters, the parties disagreed as to the existence of an agreement between the parties to each pay one-third of Jacqueline's college expenses. Joann represented that she, John, and Jacqueline formed an agreement where each person would pay one-third of Jacqueline's college expenses, resulting in each person paying $12,000 per year. Joann testified that John paid his share the first year. Joann paid John's share for each year since with one year remaining. Joann claimed that John owed her $48,000 as reimbursement for Jacqueline's college expenses.

¶ 51       John testified that he paid his share of Jacqueline's college expenses for two years. However, when asked to provide proof of payment, John only had proof of payment of $12,000 for one year. John claimed he quit paying because in March 2016 his relationship with Jacqueline soured. John also argued that, while he agreed to match Joann's contributions for Jacqueline's college expenses, it was a year-by-year agreement. John testified he agreed to pay toward Jacqueline's colleges expenses for her second year but could not state when that discussion occurred.

¶ 52       Based on the testimony and the evidence presented at the hearing on all matters, the trial court found an agreement existed and ordered John to reimburse Joann in the amount of $48,000 for Jacqueline's college expenses. John argues the trial court erred where the payment of the college expenses predated the filing of the petition for dissolution. John cites *In re Marriage of Peterson*, 2011 IL 110984, 955 N.E.2d 1131, in support of his argument.

¶ 53       In *Peterson*, 2011 IL 110984, ¶ 3, a judgment of dissolution was entered in August 1999. With respect to the college expenses of the children, the judgment provided a blanket reservation under section 513 of the Act (750 ILCS 5/513 (West 1998)), with no mention

of either party being obligated to pay college expenses. *Id.* ¶ 4. Eight years later, the mother filed a petition requesting allocation for college expenses of the parties' children. *Id.* ¶ 5.

¶ 54 The trial court ruled in favor of the mother, ordering the father to pay 75% of the children's college expenses, including expenses already paid. *Id.* ¶ 6. The appellate court reversed the trial court's judgment, finding that section 510 of the Act applies to education payments ordered pursuant to section 513 of the Act. *Id.* ¶ 7. The appellate court held "that the [trial court] could not order [the father] to pay for those college expenses that predated the filing of [the mother's] petition." *Id.* The Illinois Supreme Court affirmed, concluding that prior to the filing of the mother's petition for dissolution, the father had no concrete obligation to provide for educational expenses under the decree. *Id.* ¶ 18. Because the parties' divorce decree reserved the issue of college expenses pursuant to section 513 of the Act, the court found that neither party had a concrete obligation to provide for education expenses. *Id.*

¶ 55 We find *Peterson* distinguishable. Here, Joann never filed a motion seeking section 513 contributions. Section 513 of the Act (750 ILCS 5/513 (West 2016)) grants the trial court the discretion to extend the parent's obligation to support his or her children beyond their minority when that support is for educational purposes. Rather, Joann sought educational support for Jacqueline in her petition for dissolution based on an agreement with John. See *In re Marriage of Koenig*, 2012 IL App (2d) 110503, ¶ 17, 969 N.E.2d 462 (concluding a partial settlement agreement regarding college expenses that was incorporated into the parties' judgment for dissolution sufficient even where the judgment for dissolution failed to contain any reservation clause and did not reference section 513 of the Act).

¶ 56 Based on the evidence, we find an agreement existed between the parties where each would pay one-third of Jacqueline's college expenses. Because Joann asked for the

college-expenses agreement to be enforced at the time she filed for divorce, we find the trial court had the opportunity to properly consider the agreement and analyze the evidence surrounding the formation of the agreement. See *In re Marriage of Chee*, 2011 IL App (1st) 102797, ¶ 17, 952 N.E.2d 1252. Based on the agreement, we find reimbursement from John to Joann in the amount of $48,000 proper. Therefore, the court did not err when it ordered John to reimburse Joann for Jacqueline's college expenses.

¶ 57                                    III. CONCLUSION

¶ 58            For the foregoing reasons, we affirm the trial court's judgment.

¶ 59            Affirmed.